MAKELY v. AMERICAN LEGION OF HONOR.

(Filed November 10, 1903.)

1. INSURANCE—*Contracts—Policy—By-Laws.*

> A mutual life insurance association cannot by changing its by-laws lessen the value of a policy by reducing the amount of indemnity.

2. INSURANCE—*Contracts—Premiums.*

> The holder of a policy of insurance which has been illegally reduced by the company is entitled to sue for the premiums paid and the interest thereon.

3. INSURANCE—*Contracts—Waiver—Premiums.*

> The holder of a policy of insurance does not waive the right to sue for the premiums paid on the policy by paying premiums on the amount to which such policy had been illegally reduced if he objected to the reduction.

4. INSURANCE—*Contracts—Policy*.

> Where a policy of insurance provides that the company will, upon
> death of the insured, pay not exceeding $5,000, and it receives
> premiums on the full amount, the policy is in legal effect for
> $5,000.

ACTION by M. Makely and wife against the Supreme Council American Legion of Honor, heard by Judge *Fred. Moore* and a jury, at Fall Term, 1902, of the Superior Court of CHOWAN County. From a judgment for the plaintiff the defendant appealed.

*Pruden & Pruden* and *Shepherd & Shepherd,* for the plaintiffs.

*W. M. Bond* and *J. W. Hinsdale & Son,* for the defendant.

DOUGLAS, J. This is an action to recover the proportionate amount of certain premiums paid on a life insurance policy, or "benefit certificate," as it appears to be called in the nomenclature of the association, upon a reduction of the face value of the policy. On 15 August, 1883, the defendant association issued to the plaintiff Metrah Makely a benefit certificate in the nature of a life policy, promising to pay to the wife of said Makely at his death a sum not exceeding $5,000. The insured paid all premiums and assessments up to September, 1900, when, without any default or consent on his part or the beneficiary of the policy, the face value thereof was reduced from $5,000 to $2,000, with a corresponding reduction in the amount of the premium. The plaintiff, referring to the insured, testified as follows, without contradiction: "I was insured August 15, 1883; was insured before this; exchanged first policy for this one. I paid all premiums up to September, 1900. After that date I sent premiums to Newman, treasurer of Council, but they were returned. They sent back three-fifths and kept two-fifths of premiums. I did not

agree to this.  I wanted to keep up my insurance for $5,000.
Finally I wrote them as they would not receive full amount
of premium there was no use for me to continue to send full
amount; sent full premiums for year after the change; told
treasurer, Newman, I objected to my insurance being cut
down.  I did not acquiesce in my insurance being cut down
to $2,000; I protested against it.  I afterwards agreed to pay
two-fifths of premium.  No complaint has ever been made of
my failing to keep other agreements referred to in the appli-
cation.  To January, 1902, I paid $3,006.40, not including
interest.  Including interest to January 1, 1902, have paid
$4,231.46.  Application dated August 9, 1881.  No notice
was given me that they were going to make change referred to
in by-law before change was made.  There was no friction
between me and defendant until by-law was changed.  I paid
all the premiums.  Sometimes had to pay one, sometimes
two, and sometimes three premiums per month.  A check
dated December 28, 1900, was for the full amount of pre-
mium, and was returned.  I paid full amounts all along as
they became due; think checks were not sent back to me right
away.  Can't tell when check was first returned to me.  I
commenced sending two-fifths of original amount, and have
kept it up to present.  I am still a member, and have recently
paid two-fifths of original premium; have kept it (two-fifths)
up.  I am, I suppose, still insured for two thousand dollars.
I am still holding policy.  Am suing for damages for destroy-
ing policy.  We didn't expect damages for more than three-
fifths; I claim damages for three-fifths of policy."  *Re-direct
examination:* "I paid the two-fifths under protest, because
they would not receive the whole amount; protested when I
sent two-fifths amount.  Paid since September, 1900, $470."

The defendant offered very little testimony, the greater part
of which was properly excluded as irrelevant.  What was
admitted raised no material issue of fact.  Practically the

133——24

case is before us on questions of law, which we think have been substantially decided in the following cases: *Straus v. Life Asso'n,* 126 N. C., 971; 54 L. R. A., 605; 83 Am. St. Rep., 699; same case on rehearing, 128 N. C., 465; *Hill v. Life Asso'n,* 126 N. C., 977; *Simmons v. Life Asso'n,* 128 N. C., 469. With one exception, the principles governing the case at bar are so nearly identical and have been so fully discussed in those cases that it seems useless for us either to repeat or enlarge upon what we have said. We must adhere to what may now be considered the settled ruling of this Court, that "Whatever may be the power of a mutual association to change its by-laws, such changes must always be in furtherance of the essential objects of its creation, and not destructive of vested rights." While relying upon our own decided cases, we are not without authorities in well-considered cases of other jurisdictions. Kerr on Insurance, 127; Niblack Benefit Societies, 58; *Ebert v. Mutual Res. Asso'n,* 81 Minn., 116; *Getz v. Am. Legion of Honor,* 109 Fed. Rep., 261; *Newhall v. Legion of Honor,* 181 Mass., 111; *Knights Templar v. Jarman,* 104 Fed. Rep., 638. In the last-mentioned case it was held by the Circuit Court of Appeals that "A clause in an application for a policy of life insurance in a mutual assessment company, that the applicant agrees, if accepted, 'to abide by the constitution, rules and regulations of the company as they now are or may be constitutionally changed hereafter,' cannot be reasonably construed as giving his assent in advance to any change which the company may see fit to make in its constitution or laws in the future which materially lessens the value of his policy by reducing the amount of indemnity which by its terms they promised to pay, nor will it have the effect of rendering such action binding upon him or the beneficiary in his policy."

The defendant has filed with us a copy of a recent opinion of the Court of Appeals of New York, 66 N. E., 932,

delivered April 7, 1903, in the case of Langan against this
defendant, in which it is held that the plaintiff cannot recover
damages. That case is interesting and important, from its
application to that at bar, being against the same defendant
and involving an identical cause of action. The Court there
holds, as we do, that the amount of the policy cannot be
reduced without the consent of the insured, who by his pro-
test and tender of premium had preserved all his rights. The
only difference is as to the remedy to which the plaintiff is
entitled. Among other things, the Court says: "The obliga-
tion of the defendant under its contract, as evidenced by the
benefit certificate, was to pay to the wife of the holder a sum
not exceeding $5,000 upon the event of his death. Until that
event occurred that contract continued, unless and until it
was avoided by some act of the plaintiff. The action of the
defendant, in the attempted amendment of the by-law, which
was in force when the plaintiff joined the association and
received his certificate, was wholly ineffectual to deprive him
of any rights which had become vested. It was beyond the
power of the defendant to affect the obligation expressed in
the certificate without the consent of its holder. *Weber v.
Supreme Tent of K. of M.,* 172 N. Y., 490; 92 Am. St. Rep.,
753. It therefore remained unaltered and unimpaired. Its
enactment constituted no breach of the contract. Upon its
promulgation, however, the plaintiff had two courses open to
him. He could notify the defendant that he refused to assent
to its action, and could tender to it the assessments upon the
basis of an insurance of $5,000. He did so, and notified it
that he would keep the tender of payment of all assessments,
legally called in the future, good. In that situation he might
remain quiescent and the contract of insurance would mature
upon his death in favor of his wife, the beneficiary named.
The contract, in that case, with the insured performing all

MAKELY *v.* LEGION OF HONOR.

the conditions required of him during his life, would have been perfectly good.

"But he was not obliged to remain thus quiescent and to incur apprehended risks which might present themselves to his mind as possibly consequent upon the illegal act of the defendant. He was fairly and justly entitled to know his rights and to have such protection against the apprehended consequences as the courts might afford him. He could invoke the exercise of the power of a court of equity to protect his rights by compelling the defendant to receive his assessments upon a basis of an insurance of $5,000 and to recognize the contract as in force. With just grounds to fear the consequences of the illegal corporate act, he could demand the issuance of a writ of prevention to accomplish the ends of precautionary justice by restraining the defendant from carrying out the amended by-law."

It appears that three of the seven judges dissented in this case without, however, giving any reason therefor. As they dissented from the judgment, it would seem that they must concur in the opinion that the defendant could not legally reduce the amount of its policy, and dissented only from that part of the opinion holding that the plaintiff could not recover in damages; otherwise they would have concurred in the result. With the highest respect for that able Court, we cannot concur in the opinion that the plaintiff cannot recover his premiums because the contract is still enforcible. We do not think the plaintiff should be denied his only practicable remedy simply because the action of the defendant is unlawful and void. In view of the persistence of the defendant in pursuing its arbitrary and unlawful course, it would seem a denial of substantial justice to require the insured to bequeath to his wife a law-suit for the support of her declining years, or to force him back into a hostile association where he would have no effective means of protecting his rights. We think it but

just to say to the defendant "You have refused to recognize your legal obligations to the insured ; now pay back the money you have received as the consideration for your reqpudiated contract."

There are two contentions strenuously urged by the defendant in its oral argument and elaborate brief which remain to be considered. It insists that the policy did not stipulate to pay the fixed sum of $5,000 upon the death of the insured, but only agreed to pay some indefinite sum *not exceeding* that amount. If this contention were correct and carried to its legitimate conclusion it would enable the defendant to meet its obligations upon its own terms and thus defeat the essential elements of a contract. Such a construction would doubtless insure the continued existence of the association in a prosperous condition, but it contains no element of reciprocity, and we cannot suppose that it was ever contemplated by the plaintiff. For seventeen years the defendant continued to receive from the plaintiff the full premium based upon a policy for $5,000, and when it reduced the face of the policy to $2,000 it reduced the premium in proportion. Under such circumstances we must hold that the benefit certificate was in legal effect an insurance policy for $5,000. Again, it is contended by the defendant that the plaintiff accepted the reduction in the amount of his policy by continuing to pay the reduced premium, and that he thereby waived all right of recovery for breach of the original contract. We do not think so. There is certainly no evidence of an intentional waiver, and there are no facts demanding a constructive waiver in the face of the repeated tender and protest on the part of the plaintiff. The plaintiff protested against the reduction of his policy and continued for a year to pay to the defendant the full amount of his original premium or assessment, three-fifths of which was always returned. Finding it was useless to continue this method of procedure, he

again protested against the reduction of his policy, continued to pay the reduced premium, and brought suit to recover the three-fifths of his back premiums paid upon the repudiated portion of his policy.   He received nothing from the defendant in consideration of any implied waiver.   The defendant did not pay him any money, nor did it give him any additional benefit or security.   It simply repudiated three-fifths of its contract of insurance.   It is true it reduced its premium in proportion, but it did not repay or offer to repay any part of the premiums already paid on the full amount of the policy. If it can do that, why can it not still further reduce the value of the policy to $500 or even to any nominal sum?   Any such construction would defeat the essential objects of insurance, and cannot be supposed to have been *bona fide* in the original contemplation of either party to the transaction. There are other exceptions of the defendant, but none of them can be sustained under the decisions of this Court.

The judgment is
Affirmed.