(63 Misc. Rep. 93.)

### HARRISON v. HARTFORD LIFE INS. CO.

(Supreme Court, Special Term, New York County. April, 1909.)

INSURANCE (§ 193*)—MUTUAL LIFE INSURANCE—PREMIUMS AND ASSESSMENTS—MODIFICATION.

 Where a contract of insurance provides for assessments upon death upon surviving members according to graduated assessment rates as determined by the respective ages of the members and the number of certificates in force at insured's death, and the table of rates terminates at the age of 60 years with a maximum rate of $2.68, the company cannot modify its contract so as to fix increased rates for subsequent insurance up to 65 years increasing the rate on the prior contract to a rate above $2.68 after 60 years.

 [Ed. Note.—For other cases, see Insurance, Dec. Dig. § 193.*]

Action by James F. Harrison against the Hartford Life Insurance Company. Judgment for plaintiff.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Evan Shelby, for plaintiff.

John V. Bouvier, Jr., for defendant.

GREENBAUM, J. The controversy between the parties arises out of the difference between them as to the method to be pursued in assessing the plaintiff upon the death of a member, under the certificate of membership in the safety fund department of the defendant, issued on the 31st day of March, 1882. The certificate provides for the payment to the beneficiary therein named, upon the death of a member, of a sum not exceeding $1,000, by means of mortuary assessments to be levied upon holders of certificates, in accordance with a plan outlined in the certificate as follows:

"Upon the death of the member aforesaid while this certificate is in force, * * * an assessment shall be made upon the holders of all certificates in force in said department at the date of such death, according to the table of graduated assessment rates given herein, as determined by their respective ages and the number of certificates in force at the date of such death."

The table of graduated assessment rates to which the clause above quoted refers is printed in the certificate and commences with the ages of 15 to 21, for which the rate of $0.65 is fixed, and continues with variable rates for each year after 21 years up to 60 years, for which the rate of $2.68 is fixed. It appears that, a few years after the issuance to plaintiff of the certificate in suit, the defendant discontinued issuing certificates with a table of graduated assessments ending with 60 years of age, and thereafter issued them with tables concluding with 65 years, for which the ratio of $4 was fixed; the rates for the years intermediate 60 and 65 being as follows: 61 years, $2.86; 62 years, $3.08; 63 years, $3.30; 64 years, $3.65.

The plaintiff reached the age of 60 years in 1889, and he alleges that he has been compelled to pay assessments in excess of the rate of $2.68. Defendant, in calculating the assessments, treats members holding certificates limited to the graduated table running up to 60 years in the same class as members holding certificates with the graduated table running up to 65 years. In other words, all members of the safety fund department are treated in one class. The method pursued in arriving at the ratio of assessments payable under the certificates is as follows: All the certificates in force are separated into the various ages of the certificate holders at the time of levying the assessments, and a calculation is made by multiplying the number of certificates of $1,000 each for each age up to 65 years by the respective rate fixed in the certificate for that age, and the results thus ascertained are footed up. If the total sum thus found is less than the aggregate of the death losses to be met, then the amount of the death losses to be raised is divided by the sum above found, and the quotient is regarded as a ratio applicable to each certificate holder in conjunction with the fixed rate at the then attained age of each certificate holder; the rate beyond 65 years being the same as the 65-year rate. The rate multiplied by the ascertained ratio determines the amount of each assessment to be paid by each certificate holder. The foregoing method may be illustrated by an example which the learned counsel for the defendant has given in his brief as follows:

"Assume, for instance, that we need to raise for the quarter $300,000.  Assume that there is a total of $30,000,000 of insurance outstanding.  Assume $10,000,000 at age 45, $10,000,000 at age 55, and $10,000,000 at age 65.  We now multiply the amount outstanding by the tabular rate for that age in each case and ascertain the total which will result.  We then divide the $300,000 by the total which is realized by use of one tabular rate for each age, and the quotient is the ratio which is used to ascertain the individual assessment of each member.  Stated in tabular form it would be like this:

| Insurance Outstanding. | Attained Age. | | | Rate. | Produces. |
|---|---|---|---|---|---|
| $10,000,000 | 45 | mult. | by | $1.22 | $12,200 |
| 10,000,000 | 55 | " | " | 1.92 | 19,200 |
| 10,000,000 | 65 | " | " | 4.00 | 40,000 |
| Total ................................................................ | | | | | $71,400 |

$$\frac{\$300,000 \text{ (to be raised)}}{\$71,400} \text{ equals } \$4.20, \text{ i. e., the ratio};$$

"That is, the $300,000, the amount to be raised, divided by $71,400, the amount to be raised by the use of one tabular rate, gives the quotient, 4.20, which is the ratio by which we multiply the tabular rate of each individual member, and the result is the amount due for each $1,000 of insurance which the member carries.  In other words, for each quarterly assessment, in ascertaining individual liability, we would multiply his tabular rate by the ratio 4.20, which would give his assessment per thousand on each certificate that he holds."

This is the process used by the company, and is applied to all of the certificate holders in the assessment department.  It seems to me that the general mathematical procedure for arriving at a ratio based upon a scheme of fixed graduated assessment rates fairly interprets the method indicated in or intended by the certificate of membership; but the question naturally arises:  Why should the plaintiff be bound by a calculation which compels him to pay at a fixed rate of $4 now that he has attained an age beyond 65 years, when by the terms of his certificate his rate should not exceed $2.68, the maximum rate fixed at 60 years?  Defendant claims that by including plaintiff's certificate in the one class with the certificates containing graduated rates up to 65 years the ratio is less than it would be if calculated up to 60 years.  While this is true, it is also the fact that the defendant at the same time compels plaintiff to pay at the rate of $4, a sum not mentioned in his certificate, instead of the maximum rate of $2.68 expressly fixed in his certificate.  The plaintiff, of course, does not object to the ascertainment of a ratio which is favorable to him, but desires to have the ratio multiplied by $2.68, instead of $4.  To my mind neither result would be correct, as each departs from the terms of the certificate.  There is no warrant on the part of the defendant to change plaintiff's fixed rate from $2.68 to $4.  The maximum rate is $2.68, and so far as plaintiff is concerned it is wholly immaterial that defendant has seen fit without his consent to embrace in the safety fund department certificates containing graduated assessment rates running up to 65 years.  Plaintiff's rights must be determined by his agreement with the defendant, and the latter has no power to modify it without his acquiescence.

The question of rights of other certificate holders does not enter into this discussion.  Other certificate holders are not before the court,

and their rights may only be enforced under their own contracts. It seems to me that, so far as the plaintiff is concerned, a ratio is to be determined by the general method above described by separating the certificates in force into the various ages attained by the certificate holders up to the age of 60 instead of 65. The ratio thus found is to be multiplied by $2.68, the fixed rate applicable to plaintiff, and the result would be the amount for which the plaintiff would be liable. The contract between the parties refers to a special fund department, which was safeguarded by a contract presumably entered into between the defendant and a security company, which was to act as trustee for this special fund. There was no provision for separate classes of certificate holders, and, so far as the rights of plaintiff are concerned, the method of arriving at the assessments payable upon a given death was limited by his contract to a table of graduated assessment rates particularly fixed for each age, but not beyond 60 years of age. The confusion that has been created by the abandonment by defendant of certificates limited to rates up to 60 years affords no justification for either segregating holders of certificates of the kind issued to plaintiff in a separate class or for compelling plaintiff to submit to the payment of a rate in excess of $2.68. The safety fund trust agreement contemplates the distribution among certificate holders of net interest received by the trustee and of certain other possible advantages applicable equally to all certificate holders, and nothing contained in the trust agreement would warrant any discrimination between the certificate holders. If the acts of defendant have resulted in a loss to plaintiff, it does not follow that other certificate holders must share in this loss. The burden would fall upon the defendant that issued the certificate and with which the contract was made.

Unless the parties agree as to the correct amount of the assessments for which plaintiff was liable, a reference will be directed to take an account between the parties.

Ordered accordingly.