*S. C. Bennett,* for the claimant.

*J. J. Higgins & A. L. Goodwin,* for the members in good standing.

---

ATTORNEY GENERAL *vs.* SUPREME COUNCIL AMERICAN LEGION OF HONOR.

DUNLAVY'S CLAIM.
CLEMENTS'S CLAIM.
OSTERHOUT'S CLAIM.
TUSKA'S CLAIM.

Suffolk.   March 18, 22, 1910. — May 24, 1910.

Present : KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & RUGG, JJ.

*Fraternal Beneficiary Corporation. Equitable Estoppel. Equity Jurisdiction,*
Laches.

A fraternal beneficiary corporation, in order to avert impending insolvency, adopted in good faith a by-law, which afterwards was held to be invalid, cutting down the amount of the death benefit to be paid under its outstanding certificates from $5,000 to $2,000. The by-law contained the following clause : " Provided, that the face value of the benefit certificate shall be paid so long as the emergency fund of the order has not been exhausted." This clause followed a clause providing that, if at the death of a member one full assessment upon each of the members should not amount to the full sum of $2,000, the sum to be paid should not exceed the amount collected by the assessment. *Held,* that the clause was inserted merely to give a right to the whole sum otherwise due as a death benefit where one full assessment fell short so long as the emergency fund was not exhausted, and that it did not give or preserve a right to the original sum of $5,000 so long as the emergency fund was not exhausted.

A fraternal beneficiary corporation, in order to avert impending insolvency, after much discussion among its members adopted in good faith a by-law, which afterwards was held to be invalid, cutting down the amount of the death benefit to be paid under its outstanding certificates from $5,000 to $2,000. A member who knew of the provisions of this by-law paid twenty-eight assessments under it on the reduced amount of $2,000, without protest, during one year and seven months after the by-law went into effect, and then died. About four months later the corporation paid the beneficiary $2,000 and the certificate of the deceased member was surrendered to it. Over a year and nine months later the beneficiary brought an action in another State to recover the difference between the sum

paid and $5,000. During a period of four years before and after the death of the member and the date of the settlement and up to the time of the bringing of the action the corporation had conducted its business, levied assessments and admitted new members on the basis that its liability under this certificate was $2,000 and that such liability had been settled by the payment of that sum. Upon these facts the beneficiary under the certificate presented a claim for the alleged balance of $3,000, and contended that he was entitled to share to that amount in an emergency fund in the hands of the receiver of the property of the corporation appointed under R. L. c. 119, § 19, to settle its affairs. It appeared, from the facts reported by the receiver and agreed by the parties to be true, that the cutting down of the death benefits was all that kept the corporation from going into the hands of a receiver at the time the by-law was adopted, and that but for the by-law and the acquiescence in it of the members generally there would have been no emergency fund in existence at the time of the death of the member out of which this death benefit could be paid. *Held,* that a beneficiary ought not to be allowed to share in a trust fund on the ground that a by-law was void from the beginning when the existence of that fund at the date of the death of the member under whom he claims was owing to the acquiescence of the members generally, including that member, in the validity of the by-law and to the payment of assessments made by them on that basis, and that for these reasons the claim should be disallowed.

LORING, J. Dunlavy's claim (claim 151) is another of the seventeen appeals from the decree of the single justice dated October 29, 1909. See *Attorney General* v. *American Legion of Honor* (*Hall's Claim*), *ante*, 158.

In this claim the member, for a period of one year and seven months after October 1, 1900, paid "without protest" assessments (twenty-eight in number) of the reduced amount, as "on a certificate of two thousand dollars ($2,000) to the date of his death," which occurred on May 29, 1902 (one year and eight months after the by-law went into effect). On September 25, 1902, the defendant paid the beneficiary $2,000 and the certificate was surrendered to it. On July 20, 1904 (over a year and nine months later), an action was brought in Texas to recover the difference between the sum paid and $5,000.

It is agreed that the member, after October 1, 1900, paid assessments as "on a certificate of two thousand dollars." It appears that notice of the change in by-law 55 was sent to each subordinate council. More than that, the conditions which led up to the enactment of by-law 55 had been the subject of previous discussion and had resulted in the adoption of an amendment to by-law 55 of a more limited nature in the previous year. Such a notice taken in connection with the radical nature of the change

made by the new by-law must have provoked discussion. We are of opinion that unless there is evidence to the contrary each member must be taken to have known of the provisions of the new by-law 55. The member under whom this beneficiary claims, knowing of the by-law, paid assessments of the reduced amount, without protest, for one year and seven months after this by-law went into effect.

In addition to the statement as to the good faith of the defendant in making the reduction made by by-law 55, set forth in *Hall's Claim, ante,* 158, there is this statement: "Between said October 1, 1900, and May 29, 1902 (the date of the death of the member), and September 25, 1902 (the date of the settlement), and July 20, 1904 (the date of the suit or demand against the order), the order had conducted its business, levied assessments, and admitted new members on the basis of the liability under this certificate, being two thousand dollars ($2,000), and having been settled by the payment of that sum."

The first ground on which the beneficiaries rest their claim is that since the emergency fund has not been exhausted they are by the terms of by-law 55 entitled to payment of the whole $5,000. They cite in support of that contention a case in the Court of Civil Appeals for the Third District of Texas, *American Legion of Honor* v. *Storey,* 7 Tex. Ct. Rep. 517. This case was affirmed on appeal, but the question now under consideration was not raised in the appellate court. *American Legion of Honor* v. *Story* [*sic*], 97 Texas, 264.

There is nothing in this contention. The claim relied on by the beneficiaries is founded upon these words in by-law 55: "Provided, that the face value of the benefit certificate shall be paid so long as the emergency fund of the order has not been exhausted."

In construing this clause of by-law 55 it is to be borne in mind that it was provided by St. 1899, c. 442, § 11, (now R. L. c. 119, § 6,) that benefit certificates shall provide that if the death of the member shall occur when one full assessment would not amount "to the face sum" of the maximum certificate of such corporation, the amount to be paid to the beneficiary shall not exceed the amount of the full assessment or the proportionate part which said face sum bears to such maximum

certificate, "but this restriction shall not apply to a . . . corporation having an emergency or reserve fund until such fund shall have been exhausted." The proviso in by-law 55 relied upon by this beneficiary follows a clause providing that if at the death of a member one full assessment upon each of the members shall not amount to the full sum of $2,000, then the sum to be paid shall not exceed the amount collected by said assessment. It is plain that the clause relied on was inserted to give a right to the whole sum otherwise due as a death benefit where one full assessment fell short, so long as the emergency fund was not exhausted (as provided in St. 1899, c. 442, § 11) and not to give or preserve a right to the original sum of $5,000 so long as the emergency fund was not exhausted.

Had this clause been inserted for the purpose contended for by this beneficiary the object aimed at by the adoption of by-law 55 would have been defeated by the insertion of it in that by-law. The occasion of the adoption of the by-law was because unless something was done to cut down the benefits or raise the assessments the order must come to an end. To preserve to the members who had $5,000 certificates a right to collect the original amount so long as the emergency fund was not exhausted would have defeated the purpose for which the reduction provided for by by-law 55 was adopted.

The correctness of this construction is borne out by the practice of the corporation and by the amendment of this by-law made in 1901.

The second ground on which the beneficiaries claim to be entitled to the difference between the sum paid them and $5,000 is that by-law 55 was void. This question therefore is presented for decision: Can the beneficiary of a member who acquiesced in the reduction made by by-law 55 for a period of one year and seven months, now prove against the emergency fund on the footing that the by-law was void from the beginning?

This question was not presented in *Newhall* v. *American Legion of Honor*, 181 Mass. 111. The member in that case died on October 13, 1900, before any assessments had been made under the new by-law.

In deciding the question now presented for decision it is to be noted in the first place that this is not an action at law against the corporation brought on the contract between it and the member. A judgment against the corporation would now be an empty one, as is pointed out in *Attorney General v. American Legion of Honor*, 196 Mass. 151.

The present proceeding is a claim to share in the emergency fund. It is founded on the contract. But the only purpose of enforcing the rights given by the contract at the present time is to share in that trust fund. It is apparent that but for the by-law and the acquiescence of the members generally in it there would have been no fund in existence out of which this death benefit could be paid, when the member here in question died. It appears from a statement of the receiver, made in this report, that on May 29, 1901, one year before the member here in question died (eight months after this by-law went into effect), there was a deficit of $72,914.14. That is to say, crediting the order with the assessments paid on the new basis, the assessments and the emergency fund were not sufficient to pay the death benefits which had occurred (on the basis that by-law 55 was void), by $72,914.14. It also appears that this deficit on the same basis increased during the next year to $564,317.51. In these statements of condition the assessments collected were assessments of the reduced amount, and new members had been admitted on that basis. How many new members had been admitted does not appear. If it were necessary to go so far, the rights of these new members who came in on the basis that the validity of the by-law had been generally acquiesced in would have to be considered. But we do not find it necessary to go so far. It is certainly true that fewer, if any, new members would have joined the order had no change been made in its affairs. Under the financial conditions which have been stated the order must have gone into the hands of a receiver within one year and eight months after October 1, 1900, that is to say, before the member here in question died. If the order went into insolvency before this member died, the death benefit due under his certificate would not have been payable out of the emergency fund. His interest in that fund would have been to share in the balance of it after paying out of it death benefits

which accrued before the date of insolvency. *Fogg* v. *United Order of Golden Lion,* 159 Mass. 9.

In this connection it is to be borne in mind that a beneficiary is a mere volunteer under the member and is bound by what he did. *Proctor* v. *United Order of Golden Star,* 203 Mass. 587.

What we decide is that a beneficiary ought not to be allowed to share in a trust fund on the footing that a by-law was void from the beginning, when the existence of that fund at the date of the death of the member under whom the beneficiary claims is owing to the acquiescence of the members generally (including the member under whom the beneficiary claims) in the validity of the by-law and to the payment of assessments made by them on that basis.

None of the cases relied on by the beneficiary supports her contention to the contrary.

The beneficiary's counsel has argued strenuously that if the member had exchanged his $5,000 certificate for a $2,000 certificate under the belief that the by-law was valid, equity would give him relief under the rule laid down in *Livingstone* v. *Murphy,* 187 Mass. 315, and therefore that his acquiescence is not material. If it be assumed for the purposes of this case that such relief would have been given if application for it had been made promptly, that is of no consequence. What bars the beneficiary in this case is that she took no action for more than one year and nine months, and that the fund which the beneficiary now seeks to entitle herself to share in would not have existed at the date of the death of the member under whom she claims if the members generally had not acquiesced in the validity of the act which she now contends was invalid from the beginning and where she now claims to recover on that footing.

Where the member protested against the validity of the by-law and notified the defendant corporation that he intended to insist upon his rights, his rights were not affected and he is entitled to the relief given in *Newhall* v. *American Legion of Honor,* 181 Mass. 111. The beneficiary of such a member was entitled to judgment against the corporation in an action brought while it was going on. Such were the cases of *Makely* v. *American Legion of Honor,* 133 N. C. 367; *Russ* v. *American Legion of Honor,* 110 La. 587; *Williams* v. *American Legion of Honor,* 80 App.

Div. (N. Y.) 402; *American Legion of Honor* v. *Champe*, 127 Fed. Rep. 541. If under those circumstances the corporation (representing the other members) chose to go on, it went on at its own risk. The other members could not complain if the death benefit due to such a member were to be paid out of a fund which owed its existence to those other members.

The decision in *Smith* v. *American Legion of Honor*, 94 App. Div. (N. Y.) 357, proceeds upon the finding made in that case that "no notice of the change in the law [by-law] was given to either of them," the member or the beneficiary.

The beneficiary relies also on *Butler* v. *American Legion of Honor*, 105 App. Div. (N. Y.) 164, affirmed on the opinion below in 186 N. Y. 514. But the question we have to decide was not raised in that case. The only question decided in the court below was the invalidity of a subsequent by-law creating by contract a short statute of limitations.

In *Simons* v. *American Legion of Honor*, 82 App. Div. (N. Y.) 617, also relied upon in this connection, the member died on October 2, 1900, and in *Getz* v. *American Legion of Honor*, 109 Fed. Rep. 261; *S. C.* on appeal, *American Legion of Honor* v. *Getz*, 112 Fed. Rep. 119, he died on November 15, 1900. This question did not arise in those cases. All that was decided in *American Legion of Honor* v. *Orcutt*, 119 Fed. Rep. 682, was that a failure to pay assessments of which the member was not notified because he had been wrongfully suspended is no bar to a recovery by the beneficiary named in his certificate.

Of course cases like *American Legion of Honor* v. *Lippincott*, 134 Fed. Rep. 824, *American Legion of Honor* v. *Black*, 123 Fed. Rep. 650, in which it was held (contrary to *Porter* v. *American Legion of Honor*, 183 Mass. 326) that on the enactment of by-law 55 the member had an immediate right to rescind the contract and recover the assessments previously paid, do not touch this question.

For these reasons this claim was properly disallowed. The entry must be   *Decree affirmed.*

In CLEMENTS'S CLAIM (claim 153), the member for a period of two years after October 1, 1900, paid assessments on the reduced amount (thirty-six in all) "without protest." She died

on October 19, 1902, five months later than the member in *Dunlavy's Claim.* This case therefore is covered by that decision.

*Decree affirmed.*

In OSTERHOUT'S CLAIM (claim 148), the member had paid "without protest" assessments on the reduced amount for two years and a quarter (forty in all), and died on January 31, 1903. That brings this case within *Dunlavy's Claim.*

*Decree affirmed.*

In TUSKA'S CLAIM (claim 136), the member died on February 2, 1903, after having paid "without protest" assessments (forty-one in all) on the reduced amount for a period of two years and four months. The case comes within *Dunlavy's Claim.* *Decree affirmed.*

*H. A. Wyman,* receiver, *pro se.*

*S. C. Bennett,* (*L. C. McBride* of Texas with him,) for the claimants Dunlavy, Clements and Osterhout.

*L. M. Friedman,* for the claimant Tuska.

*J. J. Higgins & A. L. Goodwin,* for the members in good standing.