JACOB S. ROSENFELD *vs.* BOSTON MUTUAL LIFE INSURANCE COMPANY.

Berkshire.    September 14, 1915. — November 27, 1915.

Present: RUGG, C. J., LORING, CROSBY, PIERCE, & CARROLL, JJ.

*Insurance,* Life. *Contract,* Construction. *Corporation,* Vote of ratification by stockholders. *Payment. Estoppel. Equity Pleading and Practice,* Motion to recommit master's report.

It here was *said* that, where the terms of the contract contained in a policy of life insurance are ambiguous, all doubtful expressions are to be construed against the insurer which prepared the contract.

The holder of a policy in a mutual insurance corporation, who contends that an increase in the rate of premiums on outstanding policies is invalid as to the policy held by him, is not estopped from contesting the validity of the increase in rate by the fact that at a meeting of the policyholders of the corporation, held after the vote of the directors by which the increase in rate was adopted, a vote was passed "adopting, ratifying and confirming" all acts of the directors

---

\* Made by *Pierce,* J.

at the meeting at which the vote was passed, if it does not appear that this vote of the directors was called to the attention of the policyholders.

A policy of re-insurance upon the life of the insured, which was given in exchange for the surrender of a contract of life insurance upon the assessment plan, on the back of which was printed a Table of Rates, contained a provision that "in no event shall the assured . . . be required to pay the [re-insurer] under this contract of re-insurance any amount exceeding the rates contained in the table upon the back of said policy." The table on the back of the original policy, thus referred to, established the premium rates to be paid by policyholders between the ages of twenty-five and fifty-five years, both inclusive. The insured when he took out his original policy was forty-seven years of age. The re-insurer increased its premium rates and established a new table of rates. After the insured had passed the age of fifty-five years, the re-insurer demanded of him the premium at the increased rate. He paid it "under protest," and later brought a suit in equity against the re-insurer to enjoin it from collecting any premium in excess of the premium fixed by the table on the back of the original policy for the age of fifty-five years, and to recover back the excess of premiums over the amount so fixed paid by him under protest after he had passed that age. *Held,* that, the contract of re-insurance being one rather of ordinary life insurance than one made by a fraternal beneficiary corporation with one of its members, the defendant was bound by its promise not to demand any premium in excess of that fixed by the maximum rate named in the table on the back of the original policy, and that the plaintiff was entitled to an injunction as to future premiums; but that, as to the payments already made, the plaintiff could not recover back the amount of the excess, because the payments were made voluntarily.

Apart from the effect of statutory provisions, a payment made voluntarily is none the less voluntary because the person making it declares orally or in writing that he makes it "under protest."

A payment of an insurance premium in excess of the amount rightfully due is none the less a voluntary payment as to such excess because the insured paid such excess, as he declared, under protest "in order to keep alive his policy which had no surrender value if allowed to lapse." In such a case the insured can protect his rights fully by paying or tendering the amount of the premium which is due lawfully.

In a suit in equity the denial by the trial judge of a motion to recommit a master's report is ordinarily a matter of discretion.

CROSBY, J. This is a bill in equity to compel the defendant specifically to perform a contract of re-insurance issued by the defendant upon the life of the plaintiff.

The Greenfield Life Association of Greenfield, Massachusetts, a corporation chartered under St. 1890, c. 421, issued a policy of insurance for $2,000 upon the life of the plaintiff. This policy was dated April 21, 1897, and was a contract of insurance upon the assessment plan. The premiums upon the policy were to be paid semiannually, in conformity with a "Table of Rates" printed upon the back thereof.

In the year 1899 the name of the Greenfield Association was changed to the Atlantic Mutual Life Insurance Company. In the year 1901 the business of the Atlantic Company was taken over by the defendant. On November 26, 1901, the last named company issued to the plaintiff what it termed a re-insurance policy "on the plan of yearly renewable term insurance." This policy contains the following provision: "and it is hereby agreed that in no event shall the assured of said Atlantic Mutual Life Insurance Company of Greenfield, Massachusetts, be required to pay the Boston Mutual Life Insurance Company under this contract of re-insurance any amount exceeding the rates contained in the table upon the back of said policy."

The table of rates upon the back of the original policy, referred to in the policy issued by the defendant, established the annual, semiannual and quarterly premium rates to accrue when due from policyholders between the ages of twenty-five and fifty-five years, both inclusive.

The plaintiff, who was forty-seven years of age when the original policy was taken out by him in 1897, paid the premiums due, in accordance with this table, each year up to the time when he became fifty-five years of age, in 1905. Since 1905, the defendant company has increased the premium rates and has established a new table of rates, which is in excess of the semiannual premium as fixed by the table upon the back of the original policy for a policyholder who has reached the age of fifty-five years.

The plaintiff contends that the maximum semiannual premium of $16.70 on each $1,000, or $66.80 annually on his policy of $2,000, is the full amount which the contract obligates him to pay.

On the other hand the defendant contends that the table of rates printed on the back of the original policy and which does not fix the amount of premiums to be paid after the assured arrived at the age of fifty-five years, is printed only for the purpose of illustrating the principle of the contract of insurance involved in what is known as the assessment plan, and is not intended as a complete schedule of rates for all ages of persons insured, and that the defendant is not prevented thereby from making new premium rates applicable to policyholders after they have become fifty-five years old.

Since the year 1905, when the plaintiff became fifty-five years

of age, the defendant, in accordance with the schedules adopted by it, has demanded each year sums as premiums considerably in excess of $16.70 semiannually on each $1,000 of insurance.

It is not disputed that the plaintiff has paid, under protest each year from 1906 to 1914, both inclusive, premiums in excess of $16.70 semiannually on each $1,000 of insurance.

This bill is brought to determine the maximum limit of premiums which lawfully may be demanded under the policy. The plaintiff also prays for an accounting and that he may recover back the excess of premiums so paid, with interest.

The original policy issued by the Greenfield Life Association provided for the payment by the assured of mortuary premiums in accordance with its terms, and plainly was a contract of insurance upon the assessment plan. There is no provision in the policy of re-insurance providing for assessments to be made by reason of the death of other policyholders, but it is recited that it is issued in consideration in part upon "the payment to the Boston Mutual Life Insurance Company at its Home Office in Boston of the premiums in the table of rates found on the back of said policy for the age corresponding to the age of the assured at each anniversary of said policy, such premiums to be due and payable at the time and times stated in said policy."

These premiums become due and payable at fixed periods without reference to the decease of other policyholders, and such payments are not dependent upon any contingency whatever.

It is apparent that the policy of re-insurance is not such a contract as is usually entered into by members of fraternal or beneficiary associations, but is more nearly of the character of an ordinary, straight life insurance policy, with fixed premiums to be paid by the assured at stated periods.

The parties must be bound by the contract which they have entered into, and if it is ambiguous in its terms all doubts are to be decided against the insurer who prepared the contract. *Hatch* v. *United States Casualty Co.* 197 Mass. 101, 104.

The policy in express terms provides that "in no event shall the assured of said Atlantic Mutual Life Insurance Company of Greenfield, Massachusetts, be required to pay the Boston Mutual Life Insurance Company under this contract of re-insurance any amount exceeding the rates contained in the table

upon the back of said policy." This language by reference makes the table of rates a part of the contract and cannot be disregarded. The maximum rates as fixed by the table are for policyholders fifty-five years of age. No higher or other rate is provided for, and it must be held to be the maximum rate which the plaintiff lawfully was bound to pay after he had arrived at the age of fifty-five, without reference to the length of time afterwards that the policy might continue in force.

As this table of rates constituted a part of the contract, and as the contract clearly and unequivocally provides that "in no event" shall the assured be required to pay any amount exceeding the rates contained in the table, and as the defendant has demanded and received premiums in excess of the maximum rates so fixed, it follows that the premiums collected by the defendant since 1905 have been in excess of what under the contract the plaintiff was legally bound to pay. *Harrison* v. *Hartford Life Ins. Co.* 63 Misc. Rep. (N. Y.) 93; *S. C.* 118 N. Y. Supp. 401; 201 N. Y. 545. *Sauerbrunn* v. *Hartford Life Ins. Co.* 159 App. Div. (N. Y.) 121; *S. C.* 165 App. Div. (N. Y.) 506.

While the premiums were increased beyond the amount as provided in the table of rates referred to in the policy, by vote of the directors of the defendant company, and afterwards, at a meeting of the policyholders, a vote was passed "adopting, ratifying and confirming" all acts of the directors at the meeting at which their vote was passed, the master finds that there was no evidence that this vote of the directors was called to the attention of the policyholders. Under these circumstances the plaintiff cannot be held to have ratified this increase in the premium rates, and consequently his rights under the policy are not affected by it. *Attorney General* v. *American Legion of Honor*, 206 Mass. 186.

The case at bar is to be distinguished from those where certificates in fraternal beneficiary associations were in issue, and where such certificates expressly provided in effect that the constitution, by-laws and rules might be changed from time to time. See *Newhall* v. *American Legion of Honor*, 181 Mass. 111; *Messer* v. *Ancient Order of United Workmen*, 180 Mass. 321; *Pain* v. *Société St. Jean Baptiste*, 172 Mass. 319.

The master has found that the premiums paid by the plain-

tiff to the defendant in excess of the maximum rate set forth in the table of rates on the back of the original policy amount with interest to $257.05, and the final decree * directs the defendant to pay this sum to the plaintiff. We are of opinion that this part of the decree is erroneous and should be reversed.

It is a familiar principle of law that, unless otherwise provided by statute, where a person with full knowledge of all the circumstances pays money voluntarily to another without fraud, compulsion or duress, such money cannot be recovered back although no obligation to make such payments existed. *Hill* v. *Green,* 4 Pick. 114. *Forbes* v. *Appleton,* 5 Cush. 115. *Lee* v. *Templeton,* 13 Gray, 476. *Benson* v. *Monroe,* 7 Cush. 125. *Regan* v. *Baldwin,* 126 Mass. 485. *Taber* v. *New Bedford,* 177 Mass. 197. *Brown* v. *Nahant,* 213 Mass. 271, 276.

The master finds that "Sometime prior to 1909, the petitioner began to protest by letter to the respondent and has continued so to protest."

The plaintiff contends that as the amounts demanded by the defendant in excess of the premiums actually due were paid by the plaintiff under protest "in order to keep alive his policy which had no surrender value if allowed to lapse," he is entitled to recover such excess payments with interest, as set forth in the master's report.

We perceive nothing in this case to show that the payments were not voluntary. The plaintiff protested against the excessive rates and contended that they were unauthorized. On the other hand it appears from the master's report that "the respondent, in reply, insisted that he [the plaintiff] was not being overcharged." It is clearly apparent that the parties did not agree as to the construction of the contract or as to their respective rights thereunder, and that the amount of the premiums to be paid was in controversy.

It is well settled that a party who has paid a demand voluntarily under a claim of right cannot afterwards recover back the money, although he protests at the time against his liability and declares that he makes the payment under coercion. *Forbes* v. *Appleton,* 5 Cush. 115.

---

\* Made by *Hall,* J.

Nor can the plaintiff successfully contend that the excess payments were made under compulsion or duress because made in order to keep alive his policy. His rights under his policy would have been fully protected by paying or tendering the premiums as they became due, in accordance with the schedule of rates on the back of the original policy, namely, $16.70 semiannually on each $1,000 of insurance. *Attorney General* v. *American Legion of Honor,* 206 Mass. 168, 173. *Attorney General* v. *American Legion of Honor,* 206 Mass. 183. *Preston* v. *Boston,* 12 Pick. 7, 13. *Boston & Sandwich Glass Co.* v. *Boston,* 4 Met. 181.

Cases which hold that taxes illegally assessed and paid under protest in writing may be recovered back, in accordance with statutes authorizing such recovery, have no application to the case at bar. *McGee* v. *Salem,* 149 Mass. 238. Neither has the principle illustrated in *Carew* v. *Rutherford,* 106 Mass. 1, 11–13.

There is nothing in this case to distinguish it from ordinary payments made by virtue of a written instrument, where the parties do not agree as to its terms. The payments were not made under any mistake of fact. Payments so made undoubtedly can be recovered back, provided however that the person so paying has not by his negligence contributed to such mistake. *Blanchard* v. *Low,* 164 Mass. 118.

The first exception to the master's report is disposed of by reason of the annexation to the report, by agreement of the parties, of a copy of the policy issued by the Greenfield Life Association to the plaintiff.

The defendant's second exception * to the master's report

---

* The defendant's exceptions to the master's report were as follows:

"The defendant hereby excepts to the master's report for the reason that the requests of the defendant for rulings and findings are overruled and are not incorporated in the report in the manner and form asked for by the defendant, and the defendant excepts to those portions of the report inconsistent with the defendant's requests, to all of which refusals to rule as requested the defendant objected at the time of the hearing. The defendant further excepts to the conclusions of fact found by the master upon the evidence reported and to his rulings and report applicable thereto."

The defendant's previous objections to the master's report (apparently referred to in the opinion) were as follows:

"1. The defendant objects to the report as made for the reason that there

cannot be sustained, because, without reviewing in detail the various requests, we are of opinion that, so far as material, the findings of fact are substantially in accordance with the defendant's requests so far as they properly could have been given.

The defendant's appeal from the denial by the judge of the Superior Court of its motion to recommit the master's report cannot be sustained, as the disposition of the motion was wholly within the discretion of the court.

So much of the final decree as directs the defendant to pay to the plaintiff the excess premiums under paragraph three is reversed. Also the last clause of paragraph two of the decree, which permanently restrains the defendant, its officers, employees, servants, agents, receivers or assigns from in any other way violating the conditions of the policy issued by the defendant to the plaintiff, is reversed and stricken out. The final decree is in all other respects affirmed.

*Ordered accordingly.*

*M. B. Warner,* (*J. Barker* with him,) for the defendant.
*J. M. Rosenthal,* (*J. B. Cummings* with him,) for the plaintiff.

are not attached thereto complete copies of the policies of life insurance referred to in the report.

"2. The defendant objects to the refusal of the master to grant the defendant's requests for findings and rulings, in the manner and form asked for by the defendant, and the defendant objects to those portions of the report inconsistent with the rulings and requests asked for by the defendant."