Spiegel, J.
This is-an-action of contract or tort in which the plaintiff seeks to recover $2,086.75 on account of money paid to the defendant under the circumstances hereinafter set forth. The trial judge found for the defendant. The plaintiff filed twenty-four requests for rulings, and claims to be aggrieved by the trial judge’s rulings and refusals to rule as requested. The following facts appeared:
The plaintiff is a customhouse broker licensed to do business at the Port of New York, but not licensed to do business at the Port of Boston. The defendant is a customhouse broker licensed to do business at the Port of Boston.
The Nissho Co. Ltd., not a party to this action but one whose relationship to the parties is material, is ah importer doing business in New York City and importing merchandise through various ports of the United States.
The plaintiff was the customhouse broker in charge of clearing through customs the importations of Nissho Co. Ltd. which were entered at the Port of New York. The *67 plaintiff also customarily acted for the Nissho Co, Ltd, with respect to imports that were entered at other ports, at which the plaintiff was not licensed to do business, by serving as a means through which the various customs documents relating to imports of Nissho Co. Ltd., were transmitted to licensed customhouse brokers at the various ports involved, for their attention and disposition. Instructions as to delivery or other disposition of the merchandise imported at such ports were given by Nissho Co. Ltd. to the plaintiff and the plaintiff transmitted such instructions to the locally licensed brokers.
For two years prior to and including the time of this controversy, the defendant, at the request and direction of the plaintiff, and with the knowledge of Nissho Co. Ltd, had cleared through customs all of Nissho Cb. Ltd.’s imports at the Port of Boston, amounting in all to several hundred shipments.
On October 1, 1937, the plaintiff sent to the defendant two letters containing instructions and enclosing customs .documents relative to two different lots of merchandise then in process of importation by Nissho Co. Ltd. (hereinafter respectively referred to as “Lot A” and “Lot B”),
. The first letter instructed the defendant to pay the customs duty on Lot A, by means of plaintiff’s certified check therein enclosed, and to deliver Lot A to the American Woolen Co. The second letter instructed the defendant to store Lot B in bond at a Boston Warehouse, without paying any customs duty thereon, to obtain a nonnegotiable warehouse receipt in the name of the National City Bank of New York, and to forward the receipt to the plaintiff.
On October 2, 1937 the defendant sent two letters to the plaintiff respectively relating and confirming the plaintiff’s two letters of October 1, 1937.
*68 Through the defendant’s mistake, the defendant paid the custom’s duties (amounting to $2,086.75) on Lot B, instead of Lot A, and shipped Lot B to the American Woolen Company. Also through the defendant’s mistake, Lot A was stored in bond instead of Lot B, as instructed. This error was discovered after delivery of Lot B to the American Woolen Company, which notified Nissho Co. Ltd.
By letter of October 7, 1937 the plaintiff notified the defendant of the defendant’s error and requested the defendant to deliver Lot A to the American Woolen Company. By letter of October 8, 1937, the plaintiff repeated this request, adding that Nissho Co. Ltd. was unable to pay the duty on Lot A for the time being.
By letter of October 8, 1937, a copy of which it transmitted to the defendant, Nissho Co. Ltd. wrote to the American Woolen Company, referring to “our broker at Boston, T. D. Downing, 88 Broad Street,” and continuing as follows: “We have already instructed our broker to give you the correct delivery order immediately ... If there is any further difficulty . . . please get in touch with our broker at the above mentioned-address.”
The defendant, out of its own funds, paid the duty on Lot A, and sent Lot A to the American Woolen Company, as it had been originally instructed to do.
On October 11, 1937, the defendant wrote to the plaintiff informing it of the fact that Lot B had been recalled and was being stored in a warehouse in defendant’s name, on non-negotiable warehouse receipt. In a letter dated October 14,1937, defendant requested payment of a balance of $2363.83, after payment of duties, and asked for confirmation from the plaintiff that Lot B was insured for its value plus duties and charges.
By letter dated November 23, 1937, plaintiff notified the defendant that the National City Bank of New York was *69 insisting that Nissho Co., Ltd. surrender the warehouse receipt covering Lot B, and asking whether defendant would accept the guarantee of Nissho Co., Ltd. to reimburse defendant for the duty paid in error. By letter of November 24, 1937, the defendant asserted a lien on Lot B, stating: “As we have a lien against this shipment for duty money paid we cannot see our way clear to surrender the warehouse receipt unless the amount owed is paid to us.” In a letter dated November 26, 1937, plaintiff again requested surrender of the warehouse receipt. To this the defendant replied on November 27, 1937: “As previously advised we have a lien against this shipment and propose holding the warehouse receipt until the amount due for duties and charges is paid us.”
On December 8, 1937 the plaintiff forwarded its check for $2,086.75 to the defendant, stating in an accompanying letter that it was so doing “in order to satisfy our principal here and the bank. ’ ’ On December 16, 1937 the plaintiff wrote to the defendant, stating, in part: “We wish to straighten you out in connection with the . . . check for $2086.75. . . . We did this in order to obtain the warehouse receipt which was due the principal, and for your information, we paid it out of our own pocket. In other words, we advanced this sum to you in order to maintain a worth-while business relationship with our friends, the Nissho Company ... To conclude, we sent you the check because we appointed you as our agent, so to speak, to look after the Nissho business in Boston, and therefore, having employed you to do a certain job, we felt responsible to the shipper regardless of what your viewpoint may have been.”
Sometime in 1938, the defendant, under instructions from Nissho Co., Ltd., placed Lot B on a steamship, for export from this country. On March 7, 1938 the defendant rendered a statement to the plaintiff, stating that the United *70 States Customs had audited the duty on Lot B and that there was a balance due of $300. This the plaintiff paid to the defendant.
The $2,086.75 duty paid on Lot B was not recoverable from the United States, and the plaintiff was never reim.bursed for the money it paid to the defendant. In answers to interrogatories, plaintiff admitted that “as a matter of office routine, a statement of the duty paid on its merchandise was sent (by the plaintiff) to the Nissho Co., Ltd.”
Other facts in evidence were that the defendant recognized that Lot B was the property of Nissho Co. Ltd., but believed that the defendant had a lien thereon for the duty paid by it; and that no claim for reimbursement from the defendant was made by the. plaintiff until the intervention of counsel. There was no evidence that the plaintiff ever became liable to the United States for customs duties on either Lot A or Lot B.
It would be idle to discuss each of the plaintiff’s requests for rulings separately. Some of them partook of both the nature of requests for rulings and requests for finding of fact. Others were based on' assumptions of facts which were contrary to the findings made by the trial judge. Together, the plaintiff’s requests were to the following effect: that the defendant was an agent of the plaintiff, and a sub-agent of the plaintiff with respect to the Nissho Co., Ltd. matters; that the defendant was liable in this action to plaintiff if the defendant was negligent; that there was no contractual relation between defendant and Nissho Co. Ltd., that as matter of law, defendant was not liable to Nissho Co. Ltd.; that defendant was liable because of its fiduciary relation to the plaintiff; that plaintiff had a property interest and valuable good-will in the maintenance of good relations with Nissho Co., Ltd.; and that the plaintiff was not a volunteer in paying the defendant, but that such payment was made under duress.
*71 A number of the plaintiff’s requests state correct rules of law, which however depend on factual situations at variance with the facts found by the trial judge. The trial judge found as follows: That there was a dual agency relationship between the defendant, the plaintiff and Nissho Co., Ltd. — that the defendant was an agent as to the plaintiff, and a sub-agent as to Nissho Co., Ltd.; that as a matter of fact, the defendant was not liable to Nissho Co. Ltd., because the latter did not suffer any harm; that the payment in question was voluntarily made by the plaintiff; that the plaintiff had full knowledge of all the facts at the time it paid, and that there was no fraud or coercion by the defendant; that plaintiff was not compelled to pay the defendant; that the defendant was acting honestly and in good faith in asserting its alleged lien on the goods; that the defendant violated no fiduciary obligation; that the payment by the plaintiff was without protest and without declaration to the defendant of any intention to seek reimbursement from the defendant; that after discovery of its error, the defendant was not required to go further, but that use of the defendant’s funds to pay the duty on Lot A was at least impliedly at the plaintiff’s request.
On this record we cannot say, nor do we imply, that the trial judge’s findings were unwarranted. In view of these findings, his careful treatment of the plaintiff’s many requests clearly shows no error. However, rightly or wrongly, the defendant was asserting a security interest in the goods themselves; it made no personal claim or demand on the plaintiff. The plaintiff was in fact not liable to the defendant for the amount which it paid, and the evidence shows that the plaintiff paid for reasons of its own and not from compulsion. The evidence is susceptible of the inference that the plaintiff expected to be reimbursed by the Nissho Co., Ltd. if and when the goods were removed from storage for sale within the United States, and that *72 the plaintiff’s claim against the defendant was made only-after this possibility disappeared on account of the reexport of the goods from the United States. However that may be, the plaintiff’s payment to the defendant was made voluntarily, and did not result from duress or coercion. Under these circumstances, the plaintiff may not recover.
It is an established rule of law that money voluntarily paid under a claim of right, with full knowledge of the facts on the part of the one making the payment, cannot be recovered back unless there is fraud or concealment or compulsion by the party enforcing the claim. Carey v. Fitzpatrick, 301 Mass. 525, 527. Forbes v. Appleton, 5 Cush. 115. Benson v. Munroe, 7 Cush. 125, 131. Richardson v. Brown, 260 Mass. 509, 512. McLaughlin v. Exchange Trust Co., 272 Mass. 158, 160.
And this is true although no obligation to make the payment existed. Rosenfeld v. Boston Mutual Life Ins. Co., 222 Mass. 284, 289. Hinckley v. Barnstable, 311 Mass. 600.
Report Dismissed.
The Chief Justice took no part in the decision of this case.