MADELEINE E. CAREY *vs.* JULIA FITZPATRICK.

Essex.    October 25, 1938. — December 2, 1938.·

Present: FIELD, C.J., DONAHUE, LUMMUS, QUA, & DOLAN, JJ.

*Contract,* Implied.    *Payment.    Volunteer.    Duress.    Mortgage,* Real estate: payment.

An owner of land, who, to procure a discharge of an alleged "mortgage" which had no validity because it had not been signed by the owner, some two months after a threat to foreclose that "mortgage" paid a sum which was less than the amount claimed by the mortgagee, could not properly be found to have acted under such compulsion that the payment could be recovered.

The provisions of G. L. (Ter. Ed.) c. 244, § 36, giving a mortgagor a right of action to recover an "excess" received by a mortgagee on a mortgage, had no application to a payment made by the owner of land upon a purported but nonexistent mortgage.

CONTRACT.    Writ in the District Court of Lawrence dated March 30, 1937.

On removal to the Superior Court, the action was tried before *Goldberg,* J.

The case was submitted on briefs.

*D. J. O'Connell & W. P. Thompson,* for the plaintiff.

*M. A. Cregg & T. J. Lane,* for the defendant.

DOLAN, J.    This is an action of contract in which the plaintiff seeks to recover $3,800 paid by her to the defendant for the discharge of a mortgage held by the latter upon certain real estate owned by the plaintiff.    The mortgage purported to be given to secure a loan of $3,760 evidenced by a mortgage note, and each instrument purported to be signed by the plaintiff, the mortgage deed under date of January 27, 1926, and the note under date of February 20, 1926.    The case was tried to a jury, and at the conclusion of the evidence the defendant moved for a directed verdict in her favor.    The judge then submitted two questions to the jury in response to which they answered that the plaintiff did not sign "the mortgage" or the note.    There-

upon the judge allowed the defendant's motion for a directed verdict subject to the plaintiff's exception.

The evidence tended to show the following facts: On June 5, 1920, Frank L. Carey, a relative of the defendant, purchased the real estate involved and gave a first mortgage thereon to a coöperative bank, hereinafter called the bank, to secure a loan of $6,500. He gave a second mortgage to the seller for $2,300, which was subsequently assigned to a third person and later discharged. Carey conveyed the premises on June 18, 1923, to the plaintiff, whom he married on June 20, 1920. On June 19, 1923, the plaintiff gave a mortgage to the bank for $6,000 (what happened to the first mortgage of June 5, 1920, does not appear), and on July 20, 1923, gave a second mortgage for $5,000 to the defendant and her sister. The plaintiff's counsel admitted at the trial that the plaintiff signed the note and mortgage involved in the latter transaction. The evidence was conflicting as to whether the plaintiff received any money from the defendant on account of this mortgage. Subsequently the plaintiff applied to the bank for a new first mortgage loan of $5,300. To accomplish this it was necessary to procure a discharge of the second mortgage of $5,000 held by the defendant and her sister. The defendant executed a discharge of that mortgage, which was recorded on February 16, 1926. On the same day a new first mortgage from the plaintiff to the bank in the sum of $5,300 was recorded. On April 2, 1926, a mortgage of the premises, in the sum of $3,760, purporting to be one from the plaintiff to the defendant and to be signed by the plaintiff, was recorded. It bore date of January 27, 1926, and was witnessed by a stenographer in the office of the plaintiff's husband. The plaintiff denied that she knew of the existence of this mortgage until she received a letter dated August 5, 1936, from the defendant's attorney demanding payment of the mortgage and threatening to foreclose in the event that it was not paid "plus 6% interest for ten years." Nothing had ever been paid on account of this mortgage by the plaintiff or by any one acting in her behalf. After conferring with the defendant's counsel the plaintiff consulted

disinterested counsel in relation to the demand made upon her, and thereafter made application to the bank for a new loan of $5,900, the then existing mortgage indebtedness to the bank having been reduced to about $1,000. This "admittedly was done for the purpose of paying the mortgage in question, namely the mortgage of $3,760." She authorized her brother "to deal with the settlement of this mortgage of $3,760 upon which by its terms there appeared to be ten years' interest due at the rate of 6% . . . she left it to him and gave him all the necessary papers to take care of . . . [the] matter." The plaintiff's brother in pursuance of this authority conferred with the defendant's attorney, and finally it was agreed between them to compromise the controversy by payment by the plaintiff of $3,800 in satisfaction of the note and mortgage of $3,760 and interest thereon. The plaintiff's brother negotiated a new loan from the bank of $5,900 secured by a mortgage of the real estate involved, and the sum of $3,800 was paid to the defendant's attorney, in the presence of the plaintiff, by counsel for the bank on October 23, 1936, and a discharge of the mortgage, the mortgage deed and the note were then delivered to the plaintiff.

It is an established rule of law that money voluntarily paid under a claim of right, with full knowledge of the facts on the part of the one making the payment, cannot be recovered back unless there is fraud or concealment or compulsion by the party enforcing the claim. *Forbes* v. *Appleton*, 5 Cush. 115. *Benson* v. *Monroe*, 7 Cush. 125, 131. *Regan* v. *Baldwin*, 126 Mass. 485, 487. *Rosenfeld* v. *Boston Mutual Life Ins. Co.* 222 Mass. 284, 289. *Richards* v. *Security Mutual Life Ins. Co.* 230 Mass. 320, 321. *Richardson* v. *Brown*, 260 Mass. 509, 512. *McLaughlin* v. *Exchange Trust Co.* 272 Mass. 158, 160. This is true although no obligation to make the payment existed. *Rosenfeld* v. *Boston Mutual Life Ins. Co.* 222 Mass. 284, 289, and cases cited. *Stoneman* v. *Boston*, 263 Mass. 255, 261.

The threat of foreclosure did not specify whether it meant foreclosure by judicial proceedings, by entry or by sale.

It is settled that threats of judicial proceedings in such

circumstances do not constitute compulsion. Such threats are not tortious unless made in bad faith. *Preston* v. *Boston*, 12 Pick. 7, 13–14. See *Forbes* v. *Appleton*, 5 Cush. 115, 118; *Willett* v. *Herrick*, 258 Mass. 585, 603, and cases cited; *Richardson* v. *Brown*, 260 Mass. 509; Am. Law Inst. Restatement: Restitution, § 71.

The plaintiff has not contended that the payment made by her was made under compulsion, but the case itself presents the question whether as a matter of law the threat to foreclose the mortgage precludes the payment from being treated as voluntary. Ordinarily a threat to foreclose by entry or sale in the future does not preclude a payment made in consequence thereof from being treated as a voluntary one, in the absence of fraud or mistake. See *Burke* v. *Gould*, 105 Cal. 277, 283; *Vereycken* v. *VandenBrooks*, 102 Mich. 119; *Savannah Savings Bank* v. *Logan*, 99 Ga. 291. In circumstances, however, where the mortgagee was in possession of the property and threatened a sale thereof unless the mortgagor should pay him more than was legally due, and such a payment was made, it was held that the payment was compulsory and that the mortgagor could recover back the excess. *Cazenove* v. *Cutler*, 4 Met. 246. In *McMurtrie* v. *Keenan*, 109 Mass. 185, where the mortgagor had paid the interest due on the mortgage, and the mortgagee failed to indorse the payment on the note in accordance with his promise, and demanded payment again, threatening foreclosure, and the mortgagor complied to prevent the carrying out of the threat, it was held that, as the mortgagee could sell the property without giving the mortgagor a day in court, the payment was not voluntary and that it could be recovered back. We think, however, that such cases are distinguishable in the facts from the case at bar where, as established by the jury, no valid mortgage of the real estate existed. The relation of mortgagor and mortgagee, therefore, did not exist in law between the plaintiff and the defendant, and the defendant could not have effectively carried out her threat over the plaintiff's objection. See *Richardson* v. *Brown*, 260 Mass. 509, 511. In this situation the plaintiff had an adequate

remedy by proceedings in equity to enjoin the threatened foreclosure, and to have the note and mortgage cancelled. A coercive effect of such threatened action cannot be inferred unless there is "evidence of some probable consequences of it to person or property for which the remedy afforded by the courts is inadequate." *Hartsville Oil Mill* v. *United States*, 271 U. S. 43, 49, and cases cited. *Preston* v. *Boston*, 12 Pick. 7, 13–14. *McMurtrie* v. *Keenan*, 109 Mass. 185, 186.

As before stated, the plaintiff, after the defendant's demand, consulted disinterested counsel and obtained his advice, and in consequence sought a loan from the bank "admittedly . . . for the purpose of paying the mortgage in question." The defendant's demand was made in August, 1936, and the payment was not made by the plaintiff until October 23, 1936. It is clear that in the interim the plaintiff had ample time to consider whether to resist the demand or to satisfy it. She chose to do the latter. We think that the jury would not have been warranted in finding that the threat of foreclosure put the plaintiff in such fear as to preclude the exercise by her of free will and judgment. See Am. Law Inst. Restatement: Contracts, § 492. Compare *J. Abrams & Co. Inc.* v. *Clark*, 298 Mass. 542, 545.

While G. L. (Ter. Ed.) c. 244, § 36, provides that, where a mortgagee receives more than is due on the mortgage and no suit for redemption is brought against him, the mortgagor or other person entitled to "such excess" may recover it in an action of contract, we are of opinion that, properly construed, this statute applies only in cases of valid mortgages, and then without reference to whether the excess payments were voluntary or procured to be made through mistake, fraud or duress, and that the provisions of this statute have no application to the facts in the case at bar.

*Exceptions overruled.*