CURTIS B. HINCKLEY, executor, *vs.* TOWN OF BARNSTABLE.

Barnstable. April 10, 1942. — May 28, 1942.

Present: FIELD, C.J., DONAHUE, DOLAN, COX, & RONAN, JJ.

*Equity Jurisdiction*, Mistake. *Payment. Volunteer.*

The facts that, upon a town's making a claim under G. L. (Ter. Ed.) c. 117, § 5, upon the executor of the will of one to whom it had rendered old age assistance under c. 118A, the executor on the advice of counsel and upon their being shown an opinion by the Attorney General to the effect that recovery could be had by the town, repaid the amount of the assistance to the town, and that later, in an action between other parties, this court determined that a municipality was not entitled to require such reimbursement, did not warrant a conclusion that the reimbursement made by the executor was under a mistake of fact.

Findings that, when a town in good faith and without fraud made a claim upon an executor for reimbursement for assistance rendered his testate and threatened suit therefor, the executor, without seeking an adjudication of his liability by any court, made the demanded payment under advice of counsel, did not warrant a conclusion that the payment was not voluntary.

PETITION IN EQUITY, filed in the Probate Court for the county of Barnstable on June 3, 1941.

The case was heard by *Campbell*, J., and in this court was submitted on briefs.

*C. C. Paine*, Town Counsel, for the respondent.

*H. L. Murphy*, for the petitioner.

Cox, J.   This is a petition in equity brought in the Probate Court to require the respondent to repay money paid by the petitioner for old age assistance rendered to his testatrix during her lifetime.   The petition alleges, among other things, that the money was paid under the mistaken belief that the petitioner was obliged to pay it, but that, as matter of law, he was not.   The respondent admits that the petitioner paid the money, and alleges that from the amount that it received it has paid the Federal government and the Commonwealth $565.33, "in accordance with the law and statutes in such case made and provided." The decree ordered the respondent to repay the sum that the judge found had been paid to it for old age assistance rendered under the provisions of G. L. (Ter. Ed.) c. 118A. The respondent appealed.   The judge made a report of material facts (G. L. [Ter. Ed.] c. 215, § 11).   He found that old age assistance was rendered and that, after the petitioner's appointment as executor, the town officials, relying upon G. L. (Ter. Ed.) c. 117, § 5, demanded reimbursement and threatened to bring suit against the petitioner if he did not pay.   The petitioner thereupon petitioned the Probate Court for license to sell real estate for $5,250, and, after consulting counsel as to the liability of the estate for the amount of old age assistance furnished, paid the respondent's claim.   The officials of the respondent, in making the claim for reimbursement, relied upon an opinion of the Attorney General to the effect that the town could recover for such old age assistance, and this opinion was shown to the petitioner and his counsel, and payment was then made by the petitioner.   When the respondent's claim was presented and paid, there had been no judicial determination brought to the attention of the parties as to whether the respondent could legally claim reimbursement for sums paid under said c. 118A.   After the decision in the case of *Worcester* v. *Quinn*, 304 Mass. 276, the peti-

tioner demanded repayment of the sum he had paid, and, upon payment being refused, he brought this petition. The judge found that the mistake made was not purely a question of law, but was a mutual mistake of fact as well as of law, and that the payment was not a voluntary one, but that the petitioner acted as "any ordinary prudent man would have acted under the circumstances."

The report of material facts is to be regarded as a finding of all the material facts upon which the judge's decision was founded. *Topor* v. *Topor,* 287 Mass. 473, 476. The evidence is not reported, and the ultimate findings, and those embodied in the decree itself, are conclusive unless subsidiary findings reported by the judge are inconsistent therewith and show that the decree is wrong as matter of law. *Maguire* v. *Bliss,* 304 Mass. 12, 13. There is no room for any implication of further findings, *Birnbaum* v. *Pamoukis,* 301 Mass. 559, 562, and upon this record it is for this court to determine whether the decree entered was correct upon the facts reported. *Sears* v. *Childs,* 309 Mass. 337, 339.

Although the judge found that the "mistake made was not purely a question of law but was a mutual mistake of fact as well as of law," his next finding in order is that the petitioner gave up property of the estate "through misapprehension or mistake of the law and that the . . . [respondent] has benefited by this mistake." The decree, however, contains the statement that the payment was made "through a mutual mistake of law and fact." We are of opinion that the subsidiary findings do not warrant the ultimate conclusion that there was a mistake of fact. The only subsidiary findings in this connection are that the board of public welfare of the respondent rendered old age assistance to the deceased in her lifetime; that after the petitioner was appointed, "the town officials," relying upon G. L. (Ter. Ed.) c. 117, § 5, demanded reimbursement and threatened to bring suit against the petitioner if he did not pay; that, after the petitioner consulted counsel "as to the liability of the estate," he paid; and that an opinion of the Attorney General to the effect that the

respondent could recover was shown to the petitioner and his counsel.

A fact as distinguished from the law may be taken as that out of which the point of law arises, that which is asserted to be or not to be, and is to be presumed or proved to be or not to be, for the purpose of applying or refusing to apply a rule of law. The facts found were that old age assistance had been rendered; that the Attorney General had given an opinion on the right of the respondent to recover, and the question was whether, as a legal consequence of these facts, the petitioner was liable. The repayment was made on November 6, 1938, and the opinion in *Worcester* v. *Quinn,* 304 Mass. 276, was not rendered until November 9, 1939. (See now St. 1941, c. 729, § 5.) The fact, however, that the court had not been called upon to decide the question of law that confronted the petitioner in the case at bar so that the right of the respondent to recover had never been judicially determined, does not make that question any the less one of law. See *Cochrane* v. *Forbes,* 267 Mass. 417, 421. It seems apparent that the payment by the petitioner was made under the mistaken belief that he was bound to pay, and he can hardly contend that if he had found out what the law was soon enough, and consequently would not have paid, there would have been any mistake of fact involved. In *Alton* v. *First National Bank of Webster,* 157 Mass. 341, it was said, at page 344, that so far as that case was concerned, it did not matter whether the mistake was one of fact or of law. "For even a common mistake as to a fact, but for the supposed existence of which the plaintiff would not have come into the transaction, as the defendant knew, would not warrant a recovery, when, as here, the fact was a matter equally open for the inquiry and judgment of both parties, and the defendant had a right to assume that the plaintiff relied wholly on his own means of information."

The petitioner relies upon the case of *Reggio* v. *Warren,* 207 Mass. 525. We are of opinion, however, that the cases are distinguishable. In the *Reggio* case, the parties were in confidential relations with each other. The trustees of a

will under which the plaintiff was a beneficiary gave him a note for money that was due, and the plaintiff executed a release. Thereafter it was decided by this court that the note was void because the trustees had no right to make it, although all parties believed that the note was valid. It was held that the plaintiff was entitled to have the release rescinded. It was pointed out that when the note was given the trustees were already under a liability to the plaintiff to pay him what was due, that they fully intended, when they gave the note, that it would be paid, and that, unless the release was rescinded, the trust fund would be correspondingly enriched at the plaintiff's expense and would secure to the beneficiaries in remainder a large amount of money to which they had no claim, and to which it was never intended or imagined by themselves or anybody else that they should acquire claim. Furthermore, it was pointed out that if the plaintiff had given no release, the fact that he had accepted a void note for the amount that was due would not have prevented him from enforcing the original obligation. See *Blair* v. *Claflin*, 310 Mass. 186, 189–192.

The judge found that the payment was not voluntary. "It is an established rule of law that money voluntarily paid under a claim of right, with full knowledge of the facts on the part of the one making the payment, cannot be recovered back unless there is fraud or concealment or compulsion by the party enforcing the claim." *Carey* v. *Fitzpatrick*, 301 Mass. 525, 527. Threats of judicial proceedings in such circumstances do not constitute compulsion, unless made in bad faith. *Carey* v. *Fitzpatrick*, 301 Mass. 525, 527, 528, 529, and cases cited. Payments so made cannot be recovered back, although no obligation to make such payment exists. *Rosenfeld* v. *Boston Mutual Life Ins. Co.* 222 Mass. 284, 289, and cases cited. The petitioner made the payment in question as executor. It does not appear that he took any steps to obtain the approval of the Probate Court before making the payment. (See G. L. [Ter. Ed.] c. 197, § 2, amended by St. 1933, c. 221, § 3; *Old Colony Trust Co.* v. *Segal*, 280 Mass. 212, 214.)

The parties were dealing at arm's length. The petitioner did not see fit to require the respondent to establish its claim as did the defendant in the case of *Worcester* v. *Quinn,* 304 Mass. 276. For all that appears, the respondent made the claim in good faith and in the belief that it was an honest one. There is no suggestion of fraud, compulsion or coercion. In the circumstances, the application of the rule as to a voluntary payment is not dependent upon the difficulty, which frequently exists, in ascertaining what the law is, since the rule applies not only in cases where the law is doubtful, but also where the law is well known and without dispute. Am. Law Inst. Restatement: Restitution, § 45. No question is raised as to the authority of the petitioner to make the payment. We are of opinion that the conclusion of the judge that the payment was not voluntary was not warranted by his subsidiary findings.

The judge found that the executor had given up property of the estate through misapprehension or mistake of law, and that the respondent benefited by this mistake, for the reason that the "assessors who are also the Public Welfare Board could have protected themselves under the law by securing a mortgage of the deceased's equity in her real estate, having in mind that the real estate was inventoried for $5000. and sold for $5250. at private sale." Under the provisions of G. L. (Ter. Ed.) c. 118A, § 4, inserted by St. 1936, c. 436, § 1, in force, as we assume, at the time old age assistance was rendered the deceased, the ownership of an equity in real estate upon which an applicant actually resides shall not disqualify him from receiving assistance, provided that, if such equity, "computed on the basis of assessed valuation," exceeds $2,000 in each of the five years immediately preceding his application, the board of public welfare, or other appropriate bureau, shall require a bond in a penal sum at least equal to the amount of the equity in excess of $2,000, conditioned on repayment to the town of all amounts of such assistance, without interest, such bond to be secured by mortgage of the applicant's real estate.

In the report of material facts, the judge stated that it appeared to him that if anyone is to blame for the present

situation as far as payment of this claim is concerned, the assessors, who are also the public welfare board, could have protected themselves "under the law," evidently referring to said § 4. The basis of his conclusion that the respondent has benefited for this reason has already been referred to. There is nothing, however, in the report of material facts to show that the deceased's real estate was assessed in excess of $2,000. Furthermore, the respondent can hardly be held liable or chargeable for the acts of the assessors, who are public officers, over whom it has no direction or authority and against whom it has no remedy for their failure to perform their duties. They are not the agents or servants of the town. *Hobart* v. *Commissioner of Corporations & Taxation, ante,* 341, 344, and cases cited.

The judge also found that the payment by the executor was from the assets of the estate and had diminished the estate and deprived the other "heirs at law of their respective shares in distribution." The decree recites that the respondent has received assets of the estate which do not belong to it, and to which it is not entitled. The petition did not proceed upon any such theory. Probate Courts have jurisdiction in equity of all matters in relation to the estates of deceased persons. G. L. (Ter. Ed.) c. 215, § 6, as inserted by St. 1937, c. 257. See St. 1939, c. 194, § 2. Recovery of property that is a part of an estate presents an issue under this statute. *Mitchell* v. *Weaver,* 242 Mass. 331, 337. See *Coffey* v. *Rady,* 267 Mass. 301. Under the provisions of G. L. (Ter. Ed.) c. 206, § 4, Probate Courts may require an executor to replace any moneys or property that has been improperly applied or disposed of, or the value thereof, and to pay and transfer the same, and any moneys or property with which he may be charged into a proper account or otherwise, and this right relative to the settlement of accounts is not inconsistent with the power of Probate Courts under § 6 of said c. 215. *Buzzell* v. *Schulz,* 273 Mass. 372, 375.

We assume that an amendment of the petition might make its allegations conformable to the issues that were actually tried. It is true that the petitioner did pay over

money from the assets of the estate, but he parted with this money. It was not an asset belonging to the estate that had never come into his possession or control. Even if it be assumed that § 6 of said c. 215 applies, the question whether the money that was paid can be recovered depends upon the application of correct principles of law as to that right, and not upon the mere fact that the money was at some time an asset of the estate in the hands of the petitioner. If we assume that the scope of the petition was broad enough to include an attempt to recover assets of the estate as in *Buzzell* v. *Schulz*, 273 Mass. 372, and the cases cited on page 374, nevertheless, we are of opinion that the facts found warrant no such recovery.

It follows from what has been said that the decree is reversed, and a decree is to be entered dismissing the petition.

*Ordered accordingly.*