Fabricant, Judith, J.
INTRODUCTION
This action presents a dispute regarding fees for copies of medical records. The defendant, Bactes Imaging Solutions, Inc. (Bactes), is in the business of fulfilling medical records requests under contracts with hospitals and other medical providers. The plaintiffs, having requested records and paid the fees set forth in Bactes’s invoices, claim that the fees Bactes charged exceed those permitted under G.L.c. Ill, §70. They seek a declaration to that effect, along with damages for alleged breach of contract and breach of the implied covenant of good faith and fair dealing. Before the Court are the parties’ cross motions for summary judgment. For the reasons that will be explained, the Court will conclude that the plaintiffs are entitled to the declaration they seek, but not to any damages.
BACKGROUND
The record before the Court establishes the following facts as undisputed for purposes of the present motions. In April 2008, plaintiff Kristin Mantia was injured in a motor vehicle accident, and received treatment at Braintree Rehabilitation Hospital (BRH). She retained Attorney Cara Gallucci, of the firm of d’Oliveira and Associates, P.C., to assert a personal injury claim on her behalf. Gallucci submitted a series of four requests to BRH for Mantia’s records. BRH responded to the first three requests directly, providing the requested records. By the time of the fourth request, however, BRH had contracted with Bactes, which responded on its behalf.[2]
Bactes’s response began with an invoice, in the amount of $25.82, consisting of a processing fee of $18.04, a per-page copying fee of $3.66, and a charge for “postage and handling” of $4.12. Bactes’s standard form cover sheet, faxed with each invoice, indicates that “(u]pon receipt of payment” Bactes will “immediately mail the records” to the requestor, but that “[i]f we do not receive a response within 30 days from the invoice date we will assume your office is no longer in need of the records and cancel the request.” Gallucci received and reviewed the invoice, and caused her firm to pay it, without conducting any research or forming any opinion as to its legality. Neither Gallucci nor anyone else on Mantia’s behalf expressed any protest or complaint regarding Bactes’s fee. Upon receipt of payment, Bactes sent copies of the requested records to Gallucci. Gallucci settled Mantia’s personal injury claim, and recouped Bactes’s fee, along with other litigation expenses, from Mantia’s portion of the settlement proceeds.
Attorney Michael A. Rudman practices personal injury law, and routinely requests medical records on behalf of his clients. Bactes has processed some of these requests, following the same procedure described supra with respect to Mantia. Rudman’s office has paid each invoice received from Bactes without asserting any protest or challenge.[3] After receiving payment, Bactes has forwarded the requested records to Rudman. Upon settlement or recovery of a judgment in each case, Rudman recoups Bactes’s fee, along with other litigation expenses, from the client’s portion of the proceeds.
Until 2008, Bactes set the postage and handling fee according to a formula based on its overall costs of postage plus a percentage of operating costs that it deemed related to mailing. Those costs, as set forth in its answer to an interrogatory, included “the costs of delivering the copies to the Post Office, the costs associated with the purchase and maintenance of machinery, labor costs, costs of materials such as paper, envelopes, and ink and overhead such as rent *22 and utilities.” Since 2008, Bactes has set its postage and handling fee based on a flat charge of 9.5 cents per page. The parties agree that, under either method, the postage and handling fee encompasses more than the actual cost of postage.
Bactes asserts that it makes no profit from postage and handling fees. Rather, as described by a Bactes official at his deposition, it derives profit from “efficiencies that it has developed relative to software and processes.” The Court understands that testimony to mean that Bactes operates at a cost that is less than the total amount it receives from the combination of its postage and handling fees and the maximum amounts permitted by statute for base fees and per-page copying fees; the difference constitutes its profit.
Mantia and Rudman filed this action on July 23, 2010, purporting to represent both themselves and a class consisting of all “Massachusetts persons, law offices, attorneys, insurance companies and other businesses or entities to whom Bactes has provided copies of medical records on behalf of a Massachusetts hospital or clinic as defined by c. Ill, §70 and issued a written invoice which charged a fee for ‘postage and handling,’ ” within the six years prior to filing of the action. The complaint sets forth three counts: breach of contract, based on the theory that each invoice and responding payment constitute a contract, which by implication incorporated an obligation to comply with the statute (count I); breach of the duty of good faith and fair dealing, based on the same theory (count II); and declaratory judgment, seeking a declaration that Bactes’s handling charge violates c. Ill, §70.
DISCUSSION
This Court grants summary judgment where there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Corr., 390 Mass. 419, 422 (1983). Here, although the parties offer somewhat different characterizations, the record establishes the material facts as undisputed. The disagreement is one of law, particularly the proper interpretation of G.L.c. Ill, §70. That issue is appropriately resolved on summary judgment. The Court will begin with count III, which seeks a declaration of the rights of the parties under the governing statute, and then turn to the claims presented in counts I and II.[4]
1. Count III: Declaratory Judgment.
General Laws c. Ill, §70, provides, in pertinent part:
Hospitals or clinics . . . shall keep records of the treatment of cases under their care . . . [S]uch records may be inspected by the patient to whom they relate, the patient’s attorney upon delivery of a written authorization from said patient, . . . and a copy shall be furnished upon the . . . payment of a reasonable fee, which for the purposes of this section shall mean a base charge of not more than $15 for each request. . . ; a per page charge of not more than $0.50 for each of the first 100 pages . . . and not more than $0.25 per page for each page in excess of 100 pages . . . The reasonable fee under this section maybe adjusted to reflect the consumer price index for medical care services ... A hospital or clinic may also charge an additional fee to cover the cost of postage, other priority mailing and preparation of an explanation or summary of the hospital or clinic medical record if so requested.
(Emphasis added.)
The crux of the plaintiffs’ theory is that §70 limits the fees a provider may charge for records to those expressly set forth, and that the statutory provision for postage means the amount charged by the United States Postal Service, or by an equivalent service, for transportation and delivery of the particular set of records provided in response to each particular request. Bactes’s charge for “postage and handling,” the plaintiffs contend, is unauthorized insofar as it exceeds that amount. Bactes responds, in substance, that the statutory provision for “an additional fee to cover the cost of postage [or] other priority mailing” is broad enough to encompass all costs associated with the process of preparing records for mailing, as well as actually mailing them, and that Bactes’s method allocates a reasonable approximation of such costs to each set of records, in conformity with the statutory provision for a “reasonable fee.”[5]
Neither side has cited any case law addressing the question of statutory construction presented here, nor has the Court identified any. The Court therefore considers the issue based on the language of the statute as a whole, in relation to its purpose. See Weems v. Citigroup Inc., 453 Mass. 147, 153 (2009). “When a statute does not define its words we give them their usual and accepted meanings, as long as those meanings are consistent with the statutory purpose ... We derive the words’ usual and accepted meanings from sources presumably known to the statute’s en-actors, such as their use in other legal contexts and dictionary definitions.” Comm. v. Zone Book, Inc., 372 Mass. 366, 369 (1977).
The apparent purpose of §70 is to guarantee patients access to their medical records, while permitting providers to recoup the reasonable cost of providing such access. The statute refers to a “reasonable fee,” but does not leave the determination of reasonableness to the provider’s discretion; to the contrary, it spells out the components of a reasonable fee in precise terms, authorizing only a specified “base charge," a specified charge per page, and “an additional fee to cover the cost of postage.”[6] The New Oxford American Dictionary defines “postage” as “the amount required to send a letter or parcel by mail.” The New Oxford American Dictionary (2001) at 1333. That meaning, consistent with common parlance, *23 comports directly with the legislative intent to limit fees charged to those expressly authorized.
The meaning Bactes seeks to give the term, to encompass an approximately proportional share of costs for labor, overhead, and similar items related to the process of preparing and mailing records, goes far beyond any commonly understood meaning of the word “postage.” Certainly the legislature understood that the process of providing copies of medical records would involve some indirect costs; it provided for such costs by authorizing a specified “base charge.” But nothing in the language or apparent purpose of the statute suggests that, in authorizing a fee to cover the cost of postage, the legislature intended to open the door to the sort of generalized allocation of operating expenses that Bactes has imposed. The Court concludes, therefore, that the statutory authorization of a fee “to cover the cost of postage” means exactly what it says: a fee in the amount charged by the United States Postal Service, or equivalent service, for transportation and delivery of the particular set of records requested in each instance. Declaratory Judgment to that effect will enter on count III.
2. Counts I and II: Breach of Contract and Breach of the Implied Covenant.
To recover for breach of contract, plaintiffs must prove that Bactes breached an obligation owed to plaintiffs under a contract between the parties, and that defendants suffered damages as a result of the breach. The contract, plaintiffs contend, was formed by the combination of Bactes’s invoice and each plaintiffs responding payment. As Bactes points out, the express terms of that contract provided for exactly what actually occurred: Bactes would supply the records requested, in return for plaintiffs’ payment of the amount specified in the invoice. Nothing in the contract made any reference to the statute, nor does anything in the record suggest that the parties intended to incorporate any statutory restriction.[7]
Plaintiffs nevertheless contend that the contract implicitly incorporated the restrictions of G.L.c. Ill, §70, so that a violation of the statute was necessarily a violation of the contract, as well as of the implied covenant of good faith. Put differently, plaintiffs contend that the contract included an implicit promise that Bactes would supply the records at the fee authorized by statute. Plaintiffs rely on Vieira v. First American Title Ins. Co., 668 F.Sup.2d 282, 289 (D.Mass. 2009), in which the federal district court, applying Massachusetts law, rejected a claim of breach of contract based on a title insurer’s failure to give a discount provided for by the insurer’s rate manual. Noting that Massachusetts does not regulate rates for title insurance, the Court distinguished cases from other jurisdictions recognizing an implicit contractual obligation to charge rates in conformity with statutory or regulatory limits.
Plaintiffs have identified no Massachusetts case recognizing a right to recover damages for breach of contract based on a similar theory.[8] Whether our courts would do so in appropriate circumstances remains an open question. Here, in this Court’s view, that question does not arise, because, under the so-called “voluntary payment” doctrine, the plaintiffs effectively waived the opportunity to challenge the fees Bactes charged when they paid those fees, in response to Bactes’s invoices, without protest or challenge. See Selectmen of Hull v. County Commrs. of Plymouth, 12 Mass.App.Ct. 900, 900 (1981), and cases cited (applying the “general principle that, in the absence of fraud or mistake of fact, one may not recover money paid under a claim of right unless the payment has been exacted under conditions amounting to duress”).[9]
Plaintiffs suggest that they acted under duress, because they needed the records and could get them only through Bactes. Bactes responds that the hospitals would have provided them directly. The Court does not view any factual dispute on this point as material. Plaintiffs had the option of asserting their challenge to the fees directly to Bactes or to the hospitals upon receiving the invoices, and, if neces-saiy, seeking injunctive relief to require the hospitals to comply with the statutory obligation to provide the records upon payment of the specified fees. In light of the amounts involved, the plaintiffs’ choice to pay Bactes’s invoices instead of initiating litigation was hardly unreasonable. Nevertheless, the Court concludes, that choice precludes plaintiffs from recouping any excess fees paid.
CONCLUSION AND ORDER
For the reasons stated, Bactes Imaging Solutions, Inc.’s Motion for Summary Judgment is ALLOWED as to counts I and II, and DENIED as to count III. Plaintiffs’ Cross Motion for Summary Judgment is DENIED as to counts I and II, and ALLOWED as to count III. Judgment will enter dismissing counts I and II, and, on count III, declaring that Bactes’s assessment of a handling charge, in excess of the actual cost of postage for each set of records provided, violates G.L.c. Ill, §70.
The Clerk is directed to schedule a status conference, on the earliest available date, at which counsel should be prepared to address the propriety or necessity of class certification, or of any additional relief, in light of the rulings stated herein.

Bactes describes itself as a “release of information service provider that offers specialized services in, among other things, fulfilling medical records requests.” It has contracted with a number of Massachusetts hospitals and healthcare providers to respond on their behalf to requests for records. Under its contracts, the hospital or other provider forwards the record request to Bactes, and gives Bactes electronic access to records. Bactes performs what it describes as a *24 “32-step process to manage the fulfillment process.” Among the steps, according to Bactes’s description, are verifying the request, locating and retrieving the records, screening them to prevent unauthorized release of sensitive material, and responding to the request. Bactes’s compensation consists of the fees it charges to the patient or other person making the request. Bactes’s contracts with providers are “non-exclusive,” in the sense that the providers are free to fulfill requests for records directly, although the parties dispute whether any of the providers does so in practice.

Rudman’s staff person testified at her deposition that she thought the charge for postage and handling was unreasonable and unlawful: “I think they’re all unreasonable ... I don’t know what this handling charge is . . . What is handling? I know postage is not really $6.90 for thirty-one pages. So what are they charging for." Nevertheless, she thought, “what are you going to do because you have to pay it because you need the records.”

Contrary to Bactes’s argument, the Court does not view the declaratory judgment claim as dependent on the viability of the damages claims. Rudman’s law practice is such that it is highly likely, if not certain, to make further requests for medical records, to which Bactes will respond. The record offers nothing to suggest that Bactes has changed its policy since this litigation began, or that it will do so without a court ruling. Thus, at least as between Rudman and Bactes, an actual controversy exists regarding the lawfulness of Bactes’s fee policy, regardless of the fate of the plaintiffs’ claims for damages based on past transactions.

Bactes concedes that it is subject to the requirements and limitations set by the statute, although Bactes is not itself a hospital or clinic.

The dispute presented here does not involve either priority mailing or “preparation of an explanation or summary.”

As discussed supra, to the extent that the record includes anything on the subject, it indicates the contrary at least as to Rudman: his staff person testified that she thought the fees charged were unlawfiil, but chose to pay them anyway.

Gaston v. Gordon 208 Mass. 265, 267-68 (1911), which plaintiffs cite, is not such a case. The Court there held a lease enforceable against the lessee despite the failure of the lessee’s application for a liquor license, and consequent inability to use the premises for the purpose specified in the lease, because the lease did not condition the lessee’s rent obligation on issuance of the license.

Lack of knowledge (or inquiry) as to the law, as plaintiffs suggest may have occurred here on the part of Mantia’s counsel, does not provide a basis to avoid application of the voluntary payment doctrine. See Hinkley v. Town of Barnstable, 311 Mass. 600, 605 (1942).