SUPERIOR COURT 
 
 PROVIDENT HEALTHCARE PARTNERS, LLC vs. SAMIR MELKI and BOSTON LASER EYE INSTITUTE, P.C.

 
 Docket:
 2184CV01301-BLS2
 
 
 Dates:
 January, 2025
 
 
 Present:
 Debra A. Squires-Lee
 
 
 County:
 SUFFOLK
 

 
 Keywords:
 DECISION AND ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT
 
 

             In 2016, Dr. Samir Melki (Melki) was considering the sale of his ophthalmology practice, Boston Laser Eye Institute, P.C. (Boston Laser) (together with Melki, Defendants). Provident Healthcare Partners, LLC (Provident) agreed to serve as Boston Laser’s financial advisor in connection with the sale of all or substantially all of Boston Laser, and the two entered a Transaction and Engagement Agreement (TEA). In 2018, Eli Global, LLC (Eli Global) and affiliates bought all of Boston Laser’s assets. Before the closing on March 29, 2018, Provident invoiced Defendants for its four percent fee under the TEA in the amount of $920,000, which was approved and paid from the cash proceeds of the acquisition.
            Eventually, disputes arose between Provident and Boston Laser regarding the appropriate amount of Provident’s fee and whether Boston Laser overpaid. Provident filed the instant action asserting four claims: one for a declaratory judgment that the fee was calculated appropriately under the TEA, and claims for violation of G. L. c. 93A, § 11, tortious interference with contractual relations, and unjust enrichment. Boston Laser asserted four counterclaims: breach of the TEA; unjust enrichment, fraud, and violation of G. L. c. 93A, § 11. All the claims and counterclaims essentially center on the amount
 
                                                            -1-
 
of the payment due to Provident pursuant to the TEA given the acquisition terms and purchase price. Provident now moves for summary judgment on all counterclaims and Defendants seek summary judgment on Provident’s affirmative claims.
            After a careful review of the evidence and arguments, I conclude that Defendants voluntarily paid Provident $920,000 for its work in connection with the sale of Boston Laser’s assets. There was no fraud, collusion, or concealment. To the contrary, Defendants knew the basis for the calculation of Provident’s fee and paid the fee happily. Therefore, applying the voluntary payment doctrine, judgment must enter in Provident’s favor on all of Boston Laser’s counterclaims.
            As for Provident’s claims against Defendants, the declaratory judgment claim must be dismissed because resolution of the parties’ dispute regarding Provident’s right to retain the full amount of its fee under the voluntary payment doctrine renders it moot. Moreover, Defendants are entitled to summary judgment on Provident’s remaining claims for the reasons stated below.
            Accordingly, after hearing and review, Plaintiff’s Motion for Summary Judgment is ALLOWED and Defendants’ Motion for Summary Judgment is ALLOWED-in-part. Because all the issues between the parties are thereby resolved, final Judgment shall enter.
BACKGROUND
            A. Transaction Engagement Agreement
            Boston Laser and Provident entered the TEA on December 27, 2016. Provident agreed to serve as Boston Laser’s financial advisor in connection with a sale of Boston Laser. Prior to its execution, the TEA was negotiated by the parties, and reviewed and edited by counsel for Defendants. Melki, the then sole owner and President of Boston
 
                                                            -2-
 
Laser, signed the TEA on its behalf. Although he does not recall whether he read the TEA, Melki reviewed it with Boston Laser’s then CEO.[1]
            Provident’s standard fee was a four percent contingency fee. The fee was changed during negotiation. Relevant here, section 3 details the Professional Fees due Provident and provides:
As compensation for services rendered hereunder by Provident Healthcare, [Boston Laser] agrees to pay Provident [] a fee in an amount calculated as follows: four percent (4%) of the Aggregate Transaction Value, if the Transaction Value is greater than or equal to Fifteen Million Dollars ($15,000,000), or three percent (3%) of the Aggregate Transaction Value, if the Aggregate Transaction Value is less than Fifteen Million Dollars ($15,000,000) (the Transaction Fee). . . . [T]he Transaction Fee will be paid concurrently with the completion of a closing of the Transaction.
Aggregate Transaction Value is defined in section 4 of the TEA:
For purposes of this Agreement, transaction value will be determined based on the consideration received, or to be received, by [Boston Laser], the principal shareholders and its holders of equity-linked securities, including without limitation, cash, notes and loans, securities, real and personal property, earn-out consideration, license and/or royalty arrangements, excess compensation excluding standard employment agreements, excess working capital, the value of any dividends or other distributions paid to shareholders outside the ordinary course of business, assets retained provided, that any and all deferred installments including, but not limited to, promissory notes will be valued at the present value by applying a discount rate equal to the then prevailing prime rate as quoted in The Wall Street Journal on the Closing Date, and the total amount of indebtedness assumed, forgiven, rolled-over, discharged or taken subject to (the “Aggregate Transaction Value”). . . .
Any amounts to be paid contingent upon future events shall be paid only, if, as and when received by [Boston Laser].
 
--------------------------------------------
 
[1] Melki’s understanding is not relevant.
 
                                                            -3-
 
            B. Eli Global’s Acquisition of Boston Laser
            On April 4, 2018, Eli Global entered into an Asset Purchase Agreement (APA) with Boston Laser and others. Pursuant to the APA, the “Buyers” purchased substantially all of Boston Laser’s assets. [2] The purchase price for the assets had three components: a cash payment at closing of $11.5 million; an unsecured promissory note from Eli Global in the amount of $2.3 million; and rights under an Equity Equivalence Agreement (EEA) to (I) a defined percentage of the net proceeds of a sale of BL Holdings or (ii) a defined cash payment if Boston Laser exercised its “put” right to sell its interest in BL Holdings or BL Holdings exercised its “call” right to repurchase the interest (Equity Equivalence Interest or EEI).
            Melki was satisfied with the deal as structured, believed it was a good deal, and expected a sizeable cash payment upon exercise of the put right because he expected BL Holdings would grow and acquire other doctors and practice groups. That belief was consistent with his long-standing expectation that he would only be able to sell Boston Laser for some combination of cash and “stock.”
            C. Provident’s Fee
            On March 29, 2018, approximately a month and a half before the closing of the asset purchase, Provident emailed Melki an invoice so Melki could “see how our fee came about that will eventually be plugged into the funds flow as we work towards closing.” The invoice showed an Aggregate Transaction Value of $23 million and Provident’s four percent fee of $920,000. Melki responded within an hour, writing via
 
---------------------------------------------
 
[2] The “Buyers” under the APA consisted of Boston Eye Group, P.C. and Boston Laser Eye Care Management, LLC (Boston Laser Eye Care). Boston Laser Eye Care was the new operating company intended to operate Boston Laser. The Sellers consisted of Boston Laser and another entity, Eye Care Specialists, P.C. Also party to the APA were Buyers’ affiliated entities, Eli Global and Boston Laser Holdings, LLC (BL Holdings), and the Sellers’ respective equity owners, Melki and George Frangieh.
 
                                                            -4-
 
email: “With pleasure . . . Thanks to everyone at Provident for an outstanding job!” (Ellipses in original). Defendants did not object to the invoice when it was received.
            On May 15, 2018, six days before the closing of the asset purchase, Provident emailed Melki, Boston Laser’s CEO, its counsel, and others a copy of a funds flow spreadsheet. The spreadsheet valued Boston Laser at $23 million including a valuation of the EEA rights at $9.2 million and provided that Provident would be paid $920,000 (four percent of $23 million) at closing from the funds due to Boston Laser. Boston Laser agreed to and paid that amount from the total cash proceeds due to it at closing. Neither Boston Laser nor Melki objected or challenged the amount due or paid to Provident. When the fee was paid, Melki was satisfied with Provident’s performance.
            At the time of the closing, Melki did not understand how the EEA worked or its tax implications. After obtaining advice of counsel and accountants, and a valuation of the EEA rights, Boston Laser paid a tax bond in an amount in excess of $100,000. Boston Laser has not asked for or received any of that money back.
            Defendants did not claim that Provident’s fee was improperly calculated until March 26, 2021, when they sent a demand to Provident. Included in the demand was the argument that Provident did not discount the value of the promissory note as required by the TEA. Provident agreed and offered to remit $50,000 to Boston Laser.
DISCUSSION
            Provident and Defendants are entitled to summary judgment only if they, respectively, can “show that there is no genuine issue as to any material fact and that [they are] entitled to a judgment as a matter of law based on the undisputed facts.” Bulwer v. Mount Auburn Hosp., 473 Mass. 672, 680 (2016) (quotations omitted). The burden of persuasion at summary judgment always remains with the moving party who must demonstrate “the absence of a genuine issue of material fact on every relevant issue, even if [it] would not have the burden on an issue if the case were to go to trial.” Bulwer, 473 Mass. at 683, quoting Sullivan v. Liberty Mut. Ins. Co., 444 Mass.
 
                                                            -5-
 
34, 39 (2005). Further, in considering the instant cross motions, I construe the undisputed and the disputed facts in the light most favorable to each opposing party as appropriate. See Attorney Gen. v. Bailey, 386 Mass. 367, 371 (1982), cert. denied, 459 U.S. 970 (1982).
            I.  Provident’s Motion for Summary Judgment
            Provident argues, among other things, that it is entitled to summary judgment on all counterclaims based on the voluntary payment doctrine. I agree. The voluntary payment doctrine applies and bars Boston Laser’s counterclaims, all of which are predicated on the alleged overpayment of Provident’s fee. As a result, I do not consider Provident’s waiver or contract-based arguments.
            A. Voluntary Payment Doctrine
            “It is an established rule of law that money voluntarily paid under a claim of right, with full knowledge of the facts on the part of the one making the payment, cannot be recovered back unless there is fraud or concealment or compulsion by the party enforcing the claim.” Carey v. Fitzpatrick, 301 Mass. 525, 527 (1938) (citing cases). This is true even if there was no obligation to pay. Id. The voluntary payment doctrine is a form of waiver – payment without protest and in the absence of fraud, compulsion, or concealment results in an effective waiver of the right to thereafter challenge the amount of the fee. See Mantia v. Bactes Imaging Sols., Inc., 2011 WL 5555860, at *4 (Mass. Super. Oct. 24, 2011); See also Selectmen of Hull v. County Comm’rs of Plymouth Cnty., 12 Mass. App. Ct. 900, 900 (1981) (applying doctrine to restitution claim); Resnick v. Wyman-Gordon Co., 2010 WL 5783065, at *7 (Mass. Super. Dec. 28, 2010) (applying doctrine to unjust enrichment claim).
            I am persuaded that the voluntary payment doctrine applies here. Boston Laser did not object to Providence’s invoice or the payment of Provident’s fee at the time it was made. In particular, it neither challenged the inclusion of the $9.2 million valuation of Boston Laser’s EEA rights in the Aggregate Purchase Price on which Provident based
 
                                                            -6-
 
its fee, nor the failure to apply a discount rate to the amount of the promissory note.[3] Defendants have offered no persuasive evidence of fraud, concealment, or compulsion. Accordingly, Defendants may not now – having voluntarily paid Provident without objection or challenge – seek to recoup all or some of the payment under any legal theory.[4]
            B. Defendants’ Arguments in Opposition
            Defendants oppose the application of the voluntary payment doctrine on three bases: first, that there is evidence of fraud; second, that Boston Laser did not have knowledge of all the facts; and third, that the doctrine does not apply because Eli Global made the payment. I am not persuaded by any of those arguments.
            First, Defendants argue that the invoice itself constituted a false statement on which Defendants relied. I disagree. The invoice does not contain any false statements. To the contrary, the invoice properly showed Provident’s work and gave Defendants all the necessary information to understand precisely how and why Provident was charging a fee in the amount of $920,000. The invoice states that Provident was owed $920,000 calculated as four percent of an Aggregate Transaction Value of $23 million. Further, the funds flow spreadsheet – sent to the Defendants prior to the closing – made clear that Provident’s fee was based on a $9.2 million valuation of Boston Laser’s EEA rights. Anyone reviewing the invoice and spreadsheet would have understood precisely how Provident calculated its fee. That the parties presently disagree as a
 
--------------------------------------------
 
[3] It is immaterial that, after the demand was made, Provident agreed that it neglected to discount the promissory note and offered to repay some amount to Defendants. Anyone able to do very simple arithmetic would have been able to discern that Provident’s fee was based on the full disclosed Aggregate Transaction Value without any discount. The failure to do that math was the Defendants’. They may not now seek recompense.
[4] Each of Boston Laser’s counterclaims are premised on Provident’s failure to provide a
refund of alleged overpayments.
 
                                                            -7-
 
matter of contract whether the calculation was appropriate does not mean the invoice was false or fraudulent.[5]
            Defendants argue next that they did not have full knowledge of the facts because the EEA is now worthless and, at the time of the transaction, it should have been valued at approximately $3 million (not $9.2 million). The heart of Defendants’ argument is that the $23 million valuation of Boston Laser was illusory and inflated. Again, this argument fails because, at the time they agreed to the payment, Defendants knew it was based on a Total Aggregate Value of $23 million. They knew precisely how the fee was calculated and chose to pay it. Put elsewise, Defendants had all the necessary facts. There was no mistake of fact. There was only a failure to understand or fully inform themselves of the import of the facts which does not preclude application of the doctrine. See Mantia, 2011 WL 5555860, at *4 n.9 (neither lack of knowledge nor lack of inquiry as to the law “provide[s] a basis to avoid application [of] the voluntary payment doctrine”), citing Hinkley v. Town of Barnstable, 311 Mass. 600, 605 (1942); Resnick, 2010 WL 5783065, at *7 (that party was “mistaken” as to the law did not preclude
 
--------------------------------------------
 
[5] Defendants argue that an internal Provident email sent during negotiations of the TEA supports the conclusion that “Providence knew and intended to send the false invoice.” Even if the email were admissible or relevant, Defendants’ requested inference is unreasonable. In the email, Provident merely concluded that Defendants’ proposed revision to the TEA, eliminating the use of an escrow, would not limit Provident’s ability to argue that none of the purchase price was contingent on future events. Such a reading dovetails with Provident’s position here that, based on the contract language, the value of the EEA rights properly was included in the calculation of Aggregate Transaction Value and, therefore, Provident’s fee. The email is neither itself false nor evidence of an intention to commit fraud. Indeed, if Defendants argument were accepted at face value, that they negotiated for the requested change to the TEA to insure they would not have to pay a fee premised on inclusion of the EEA into the total deal value, then a simple review of either Provident’s invoice or the funds flow spreadsheet, would have made them aware that Provident’s fee was calculated incorrectly. Presumably they would then have refused to ensure payment. They did not. They voluntarily made the payment without objection.
 
                                                            -8-
 
application of voluntary payment doctrine). See also Spivey v. Adaptive Mktg. LLC, 622 F.3d 816, 823–824 (7th Cir. 2010) (“It is no exception to the voluntary-payment doctrine when [a party] makes no effort to ascertain the factual basis of the [fee] but pays it anyway.”) (quotations and alteration omitted); Chris Albritton Constr. Co. v. Pitney Bowes Inc., 304 F.3d 527, 532 (5th Cir. 2002) (“Regarding excusable ignorance, the voluntary payment doctrine precludes courts from extending relief to those who have neglected to take care of their interests and are in predicaments which ordinary care would have avoided.”) (quotations omitted). And none of the cases to which Defendants direct me are compelling or even apposite.
            Finally, Defendants argue that because the payment was made by Eli Global, the doctrine does not apply. I am not persuaded. Defendants cite no law in support of that argument. The payment was made from the total cash proceeds that were due to Boston Laser – i.e., from Boston Laser’s money – and Boston Laser approved the payment. I can discern no reason why the mechanism of payment would defeat application of the doctrine.
            Accordingly, Provident’s Motion for Summary Judgement as to all the counterclaims is ALLOWED.[6]
 
--------------------------------------------
[6] As noted above, having concluded that the voluntary payment doctrine bars Boston Laser from seeking to recover the alleged overpayment under any theory, I need not consider either Provident’s theory of waiver or its contractual argument that it properly calculated its fee under the TEA. Pacific Ins. Co., Ltd. v. Champion Steel, LLC, 97 Mass. App. Ct. 791, 797 n.9 (2020) (conclusion “obviate[d] the need to address the plaintiffs’ alternative arguments”); Goguen v. Quality Plan Adm’rs, No. 974874, 2000 WL 282485, at *6 n.7 (Mass. Super. Feb. 11, 2000) (in allowing summary judgment for defendants, declining to address alternative arguments in support of their motion).
 
                                                            -9-
 
            II.  Defendants’ Motion for Summary Judgment
            A. Declaratory Judgment Claim
            Pursuant to the declaratory judgment statute, “the superior court . . . may on appropriate proceedings make binding declarations of right, duty, status and other legal relations sought thereby, either before or after a breach or violation thereof has occurred in any case in which an actual controversy has arisen and is specifically set forth in the pleadings[.]” G. L. c. 231A, § 1. Disputes about contract interpretation can properly be resolved via a declaratory judgment. See Sahli v. Bull HN Info. Sys., Inc., 437 Mass. 696, 705 (2002). However, declaratory relief is only appropriate in the face of an “actual controversy.” G. L. c. 231A, § 1.
            Because the rights of the parties have been settled based on the application of the voluntary payment doctrine, the declaration Provident seeks – a ruling on the meaning and effect of the parties’ contractual obligations – would “not affect” the future conduct of the parties and declaratory relief, therefore, would be inappropriate. See Board of Assessors of Edgartown v. Commissioner of Revenue, 379 Mass. 841, 844 (1980) (declaratory relief was inappropriate in case involving statutory interpretation where statute was effective for only one year and would “not affect the future conduct of the parties”); Massachusetts Outdoor Advert. Council v. Outdoor Advert. Bd., 9 Mass. App. Ct. 775, 777 (1980) (“it is a function of declaratory proceedings to guide the future conduct of parties”). Simply put, given my conclusion that Defendants cannot recover from Provident for any alleged overpayment, there is no active controversy, and the declaratory judgment claim is moot. Thus, I do not allow Defendants’ Motion for Summary Judgment on this claim but must dismiss it.
            Accordingly, Count I of the Complaint is dismissed as moot.
 
                                                            -10-
 
            B. G. L. c. 93A Claim
            Provident’s G. L. c. 93A claim arises from Defendants’ alleged baseless threat of litigation – contained in the March 26, 2021 G. L. c. 93A demand letter – in contradiction of the plain language of the TEA. Defendants argue that the act of sending a G. L. c. 93A demand letter cannot constitute violation of G. L. c. 93A. I agree, albeit on a different ground – the absolute litigation privilege. See Gillette Co. v. Provost, 91 Mass. App. Ct. 133, 140 (2017) (“The litigation privilege generally precludes civil liability based on statements by a party, counsel or witness in the institution of, or during the course of, a judicial proceeding, as well as statements preliminary to litigation that relate to the contemplated proceeding.”) (quotations omitted).
      “The litigation privilege . . . basically is a defense to suit.” Patriot Group, LLC v. Edmands, 96 Mass. App. Ct. 478, 483 (2019). “The privilege is absolute.” Doe v. Nutter, McClennen & Fish, 41 Mass. App. Ct. 137, 140–141 (1996), citing Theran v. Rokoff, 413 Mass. 590, 591–592 (1982); Robert L. Sullivan, D.D.S., P.C. v. Birmingham, 11 Mass. App. Ct. 359, 361 (1981). Where applicable, “[w]ritten or oral communications made by a party, witness, or attorney prior to, in the institution of, or during and as a part of a judicial proceeding involving said party, witness, or attorney are absolutely privileged even if uttered maliciously or in bad faith.” Patriot Group, 96 Mass. App. Ct. at 483 (quotations omitted). Put elsewise, “[s]tatements made in the course of a judicial proceeding that pertain to that proceeding are . . . absolutely privileged and cannot support [civil liability].” Id. at 483-484, quoting Correllas v. Viveiros, 410 Mass. 314, 319 (1991).
            Here, the letter at issue was sent by counsel for Boston Laser to make a formal demand precedent to filing suit. Counsel detailed the reasons for Boston Laser’s contractual belief that it had been overcharged and that Provident’s fee was inconsistent with the TEA.  The letter concluded that, absent agreement, Boston Laser would file suit. Thus, it falls squarely within the privilege. SCVNGR, Inc. v. eCharge Licensing,
 
                                                            -11-
 
LLC, 2014 WL 4804738, at *5 (D. Mass. Sept. 25, 2014) does not assist Provident because that case did not involve a G. L. c. 93A claim based only on a G. L. c. 93A demand letter and did not address the litigation privilege.
            Accordingly, summary judgment must enter for Defendants on Provident’s G. L. c. 93A claim.
            C. Intentional Interference with Contractual Relations
            Provident alleges that Melki tortiously interfered with Provident’s contractual relations with Boston Laser. “To succeed on its claim for intentional interference with advantageous relations, a plaintiff must prove that ‘(1) [it] had an advantageous relationship with a third party (e.g., a present or prospective contract or employment relationship); (2) the defendant knowingly induced a breaking of the relationship; (3) the defendant’s interference with the relationship, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant’s actions.’” Columbia Plaza Assocs. v. Northeastern Univ., 493 Mass. 570, 588 (2024), quoting Blackstone v. Cashman, 448 Mass. 255, 260 (2007). I agree that summary judgment is appropriate on this claim because, based on the undisputed evidence, Provident has neither established any interference with its present or prospective relationship with Boston Laser nor any damages.
            Provident’s claim is premised on Melki’s attempt to claw back Provident’s fee, his threatened lawsuit, and an alleged violation of his non-competition agreement with BL Holdings, which could “jeopardize[e] [Boston Laser’s] ability to honor its contractual commitments.” After careful review of the record, I find no evidence that – as of the time Provident filed its complaint – it had a prospective business relationship with Boston Laser. Nor can I find any evidence of damages. Provident’s assertion that legal fees in this case constitute such damages makes no sense and violates the American Rule. See John T. Callahan & Sons, Inc. v. Worcester Ins. Co., 453 Mass. 447, 449 (2009) (“Our traditional and usual approach to the award of attorney's fees for
                                                            -12-
 
litigation has been to follow the ‘American Rule’: in the absence of statute, or court rule, we do not allow successful litigants to recover their attorney’s fees and expenses.”). The damages that result from an interference with advantageous relations are the anticipated benefits of the relationship. But here, Boston Laser already paid Provident its fee in full in 2018. I discern no future relationship between Provident and Boston Laser, or any future benefit, with which Melki has interfered. Absent evidence that would support those elements, the intentional interference claim cannot proceed.
            D. Unjust Enrichment
            Finally, Provident’s unjust enrichment claim was brought in the alternative and would only arise if Provident was required to return any portion of its fee. Because I have concluded that Boston Laser is not entitled to recover any alleged overpayment, Provident’s unjust enrichment claim fails.
ORDER

            For the foregoing reasons, Plaintiff’s Motion for Summary Judgment is ALLOWED and Defendants’ Motion for Summary Judgment is ALLOWED-in-part. Judgment shall enter as follows:
            Count I of the Complaint is dismissed as moot.
            Summary Judgment shall enter for the Defendants against the Plaintiffs on Counts II- IV of the Complaint.
            Summary Judgment shall enter for the Plaintiff against the Boston Laser on Counts I-IV of the Counterclaim.